HENRY J. KUNKEL, JR. *vs.* FRANCIS N. ALGER & another.[1]

Plymouth. March 13, 1980. — June 23, 1980.

Present: GRANT, ARMSTRONG, & GREANEY, JJ.

*Negligence,* Snowmobile. *Motor Vehicle,* Entrustment. *Practice, Civil,* Instructions to jury.

At the trial of an action against the owner of a snowmobile on the theory that the owner negligently entrusted the snowmobile to an inexperienced operator, the judge's instructions with respect to the specific elements of negligent entrustment were insufficient to inform the jury that, in order to find the owner liable, the plaintiff was required to prove that the operator's incompetence constituted the legal cause of the plaintiff's injuries. [81-85]

In an action by a plaintiff who was injured while riding as a passenger on a snowmobile, apparently inconsistent verdicts by the jury who found for the operator and against the owner on a theory of negligent entrustment could not be supported by theories which were not argued to the jury, nor included in the judge's charge, nor incorporated into the case by posttrial amendments to the complaint purposely designed to conform the pleadings to the evidence, and which were lacking in adequate affirmative proof. [85-86]

TORT. Writ in the Superior Court dated March 14, 1973.

The case was tried before *Young, J.,* and posttrial motions were heard by him.

The case was submitted on briefs.

*Robert F. McLaughlin* for Francis N. Alger.

*Robert G. Clark, III,* for the plaintiff.

GREANEY, J.   On December 4, 1971, in Acton, Maine, the plaintiff suffered a fractured leg while riding as a passenger on a snowmobile operated by the defendant Theodore Lebida and owned by the defendant Francis N. Alger.   His action in the Superior Court originally sought recovery

_____

[1] Theodore Lebida.

against Lebida for negligent operation of the snowmobile and against Alger on the basis of vicarious liability. The case was tried to a jury (under the substantive law of the State of Maine) against Lebida on the theory expressed above, and against Alger on the theory that he negligently entrusted the snowmobile to an inexperienced person. The defendants' motions for directed verdicts (Mass.R.Civ.P. 50[a], 365 Mass. 814 [1974]), made at the close of the plaintiff's case and again at the close of all the evidence, were denied. The jury returned verdicts for Lebida and against Alger, assessing damages against Alger in the amount of $100,000. Alger moved for judgment notwithstanding the verdict (Mass.R.Civ.P. 50[b], 365 Mass. 814 [1974]), and, alternatively, sought a new trial. Kunkel moved for a new trial as to Lebida.[2] That portion of Alger's motion seeking judgment n.o.v. was denied; that part of his motion requesting a new trial was allowed only as to damages, unless the plaintiff should accept a remittitur of $25,000. At the same time, the plaintiff's motion to amend his complaint "to conform [it] to the evidence" (Mass.R.Civ.P. 15[b], 365 Mass. 761-762 [1974]), by adding an express claim against Alger for negligent entrustment, was allowed,[3] and the motion for new trial as to Lebida was denied. When the plaintiff accepted the remittitur, an amended judgment setting damages at $75,000 was entered. The plaintiff has not appealed from the judgment in favor of Lebida or from the denial of his motion for new trial. Alger has appealed from the denial of his motions seeking posttrial relief and from the amended judgment. We hold that the judgment in Alger's case must be reversed, the verdict set aside and a

---

[2] The motion is mislabeled as one directed against Alger but from the context clearly seeks a new trial on the negligent operation claim against Lebida.

[3] In addition to the negligent entrustment claim, two other claims were added to the original amended complaint, but neither of these claims has been argued to us as having a basis in the evidence sufficient to support a finding of liability as to either defendant.

new trial ordered.[4]   Questions as to the status of the case against Lebida are left for consideration in the Superior Court.

The following is a summary of the relevant evidence and other material events at the trial.   The plaintiff, along with others, had been performing work at Alger's residence in Acton, Maine, on December 4, 1971.   There were about ten or twelve inches of new snow on the ground.   The workers had left their automobiles parked on a road about one mile distant from the residence.   Throughout the course of the day, passengers and supplies were transported to and from the house by snowmobile and sled along a camp road which led from the parking area to the residence.   Alger's neighbor, one Doherty, an experienced snowmobile operator, had established a clear path of tamped snow about four and one-half feet wide over the length of the road.

By dusk the workers were preparing to return to their cars.   Kunkel arranged to ride as a passenger on Alger's snowmobile, which was operated by Lebida.   Lebida's familiarity with the snowmobile consisted of operating it

---

[4] At the outset, we reject the plaintiff's contention that the transcript of the evidence should be disregarded as part of the record on appeal because it was filed beyond the date established therefor by the allowance of the defendant's last motion to enlarge time.   Mass.R.A.P. 9(c) and (e), 365 Mass. 852, 853 (1974).   Failure to furnish the transcript within the allocated time is generally a serious misstep, the appropriate remedy for which is presumptively dismissal of the appeal.   *Vyskocil* v. *Vyskocil*, 376 Mass. 137, 139-140 (1978).   However, the record reveals that the defendant has been diligent in preparing the record and the appendix and obtained extensions with reference to the preparation of the transcript at each stage of the appeal except the last.   It is apparent that the slight delay in filing the transcript in the lower court after the last extension was attributable to the hospitalization of the court stenographer who took the evidence at the trial.   The plaintiff never sought to invoke the presumptive remedy by moving to dismiss the appeal, and he relies on portions of the transcript in support of his arguments.   Nor has the plaintiff shown any prejudice resulting from the late filing of the transcript.   In all other respects the defendant has complied with his obligations to perfect the appeal in a timely and orderly fashion.   *Superintendent of Worcester State Hosp.* v. *Hagberg*, 374 Mass. 271, 273-274 (1978).   We conclude that the transcript should be considered a proper part of the appellate record.

that day for approximately forty-five minutes, after having received instructions from Doherty, and on a previous occasion from another experienced driver. Tools were loaded on the sled behind the vehicle, and Alger's son, then age twelve, prepared to ride on the back of the sled. Kunkel was provided with a helmet and, according to their testimony, was instructed by Messrs. Alger, Lebida and Doherty to tuck in loose clothing, to lean in the same direction as the operator when traveling over contoured terrain, and to keep his feet within the stirrups provided on the machine for the protection of the passenger's feet. Kunkel did not recall receiving these instructions. Kunkel testified that he kept his feet inside the snowmobile, that after the machine reached the top of a steep hill "it just went sideways, out of control . . . [and] something hit my leg . . . tak[ing my] leg out of the stirrup . . . . [T]he next thing I know, I was in the snowbank." Alger testified that he observed Kunkel removing his right foot from the stirrup and that he shouted at him to keep his foot in but could not be heard over the noise of the snowmobile engine. Alger's son testified that from his position on the sled behind the snowmobile, he also observed Kunkel's foot out of the stirrup just prior to the accident. He testified that the path "slanted to the right," that the snowmobile "slid" or "leaned" to the right, that he heard Lebida yell to Kunkel to lean (to the left), that Kunkel did not lean, that the machine tipped, and that Kunkel, who had his right foot out of the stirrup, caught it in the snow as the machine was tipping. He testified that after the accident the sled, which moved independently of the snowmobile, was in the center of the path. He saw no ruts in the path. Lebida testified that as the vehicle "started up the second hill . . . I could feel the machine or the weight shift, so I yelled to lean and I leaned and . . . I felt resistance, so I let off the throttle . . . [and] [t]he snowmobile stopped . . . in the middle of the path . . . lying against the embankment on the right-hand side . . . [but did not] hit the enbankment."

A game warden of the State of Maine, Vernon Walker, investigated the accident. His deposition read at the trial

indicated that he had completed a snowmobile accident report. That report stated, as to the cause of the accident, that the machine was "[t]ravelling on rutted road at moderate speed, sled went into old wheel rut, passenger's leg caught between sled and frozen banking. [O]perator never drove a snow sled before." Walker also stated in the deposition that, although he had made the foregoing entry, based on his investigation, "[n]obody was to blame, [it] was just an accident, [and he] did not mean to indicate by this entry that [inexperience] was a cause of the accident [because] I don't know what caused the accident." The remainder of the evidence is not relevant to our disposition of the issues.

In his summation, the plaintiff's counsel argued to the jury: "Ladies and gentlemen, as to the liability in this matter, I'm going to ask you to find that both defendants in this case were negligent. That Ted Lebida was negligent in the operation of that vehicle, by reason of his inexperience. I'm also going to ask you to find that Frank Alger was negligent in entrusting this dangerous instrumentality, and making provisions for the transportation of Henry Kunkel, out of there by such an inexperienced person. That he certainly did not have the experience or the knowledge to instruct anybody with respect to anything concerning the operation or being a passenger on such a motor vehicle." Defense counsel in his closing argued to the jury that Lebida was not negligent in operating the snowmobile and that the accident was caused solely by Kunkel's having his right foot outside of the stirrup in a position where it could, and did, encounter an obstacle in the path. He did not discuss the connection between Lebida's conduct and Alger's potential responsibility. Both parties submitted requests for instructions which framed liability in terms of whether the defendants' conduct subjected the plaintiff to an unreasonable risk of harm. The judge's instructions on the standard of care and legal causation are set forth in the margin.[5]

---

[5] "Now, what kind of case is this? I told you when first we met that this was a negligence case and that Mr. Kunkel alleges that both Mr. Alger

1. A proper resolution of the liability issues in the case required that the jury be carefully instructed, under Maine law, on the tort of negligent entrustment. In *Sweet* v. *Austin*, 158 Me. 90, 94 (1962), a negligent entrustment case, the Supreme Judicial Court of Maine cited with approval § 390 of the Restatement (Second) of Torts (1965), which defines the concept of negligent entrustment in this manner: "One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others

and Mr. Lebida were negligent . . . . In Maine a negligent act is a 'violation of the duty to use reasonable care toward another.' I equate negligence with carelessness. Certain of the cases speak of fault. Negligence is doing some act that a reasonably prudent person would not do, or failing to do something that a reasonably prudent person would do under the same or similar circumstances. It is, in other words, the failure to use ordinary care under all the circumstances.

"Now, using that standard, it's for you to judge whether either the defendant, Mr. Alger, in letting Mr. Lebida use the sled and in whatever went on prior to the trip out at the end of the day, was negligent. Or, whether Mr. Lebida in his operation of the sled, using the standard as I have charged it to you, or whether both were negligent or not negligent. That is, did they use the ordinary care under the circumstances.

"Now, if you're convinced of that by a preponderance of the evidence, you have not decided the case, because you next go on to the point of considering whether that negligence . . . caused the incident that took place here. You must find both negligence, on behalf of someone, and causation. Not every consequence that follows an accident necessarily results from it.

"Take this example. I am driving down the street. You are driving on the other lane to meet me. I drive through a red light. That certainly is evidence of negligence. It's red against me. But, I get all the way through the intersection and you come across the double line into my lane and we smash head-on. I am negligent, certainly, in driving through the red light, but my negligence has not caused the accident that I just described, because I was always in my lane.

"So, you must find both negligence and causation. The best way I can explain causation to you is that if you find that Mr. Alger or Mr. Lebida or both were negligent, was the result that occurred here, the injury to Mr. Kunkel, within the risk that was created by their negligence. If it was outside the scope of the risk created by their negligence, even if either or both were negligent, then you should find for the defendants . . . ."

whom the supplier should expect to share in or be en-
dangered by its use, is subject to liability for physical harm
resulting to them." See also Restatement (Second) of Torts
§§ 307, 308 (1965); Prosser, Torts § 104, at 677-679 (4th ed.
1971). In order to prevail under this test, a plaintiff must
prove not only that the defendant actually entrusted a chat-
tel to someone whom he knew or should have known was in-
competent or unfit to use it safely,[6] but also that the en-
trustee's incompetence or unfitness constituted the legal
cause of the plaintiff's injuries.[7] The necessity of establish-
ing both elements as a predicate to recovery for negligent
entrustment is made apparent by the illustrations to Com-
ment b of § 390,[8] and is implied by the few Massachusetts

---

[6][It should be noted that, in Massachusetts, proof is required directly or
by inference that the entrustor had actual knowledge of the entrustee's in-
competence, and, in this respect, we do not follow the Restatement rule,
which permits negligence in the entrustment to be established on a show-
ing that the entrustor had reason to know that the entrustee was incompe-
tent. *Leone* v. *Doran,* 363 Mass. 1, 13 n.3 (1973), *S.C.* 369 Mass. 956
(1975).

[7] Restatement (Second) of Torts § 390, Comment c (1965), explains
that: "The rule stated in this Section sets out the conditions under which a
supplier of a chattel is subject to liability. As always this phrase denotes
that a supplier is liable if, but only if, his conduct is the legal cause of the
bodily harm complained of . . . ." See also Restatement (Second) of Torts
§ 431 which defines legal cause.

[8] "1. A gives a loaded gun to B, a feeble-minded girl of ten, to be car-
ried by her to C. While B is carrying the gun she tampers with the trigger
and discharges it, harming C. A is subject to liability to C.

"2. A permits B, a boy of ten, who has never previously driven a motor
car, to drive his motor car on an errand of B's own. B drives the car care-
lessly, to the injury of C. A is subject to liability to C.

"3. A permits B, his chauffeur, who to his knowledge is in the habit of
driving at an excessive speed, to use his car to take B's family to the sea-
shore. While driving the car for this purpose, B drives at an excessive rate
of speed and harms C. A is subject to liability to C.

"4. A lends his car to his friend B for B to use to drive a party of friends
to a country club dance. A knows that B has habitually become intoxi-
cated at such dances. On the particular occasion B becomes intoxicated
and while in that condition recklessly drives the car into the carefully
driven car of C, and causes harm to him. A is subject to liability to C.

"5. A rents an automobile to B, a young man who announces his pur-
pose to drive it from Boston to New York on a bet that he will do so in

cases that have dealt with the tort. See *Kenyon* v. *Hatha-way,* 274 Mass. 47, 55 (1931); *Woodman* v. *Haynes,* 289 Mass. 114, 116-117 (1935); *Zarski* v. *Creamer,* 317 Mass. 744, 746 (1945); *Leone* v. *Doran,* 363 Mass. 1, 11 (1973). The causation standard has been clearly stated in *Bensman* v. *Reed,* 299 Ill. App. 531, 534 (1939): "The liability of the owner does not arise by merely proving that he gave permission to an incompetent driver to drive his automobile but it must also appear that the incompetency alleged was the proximate cause of the commission of the . . . act which caused the injury." See *Harrison* v. *Carrol,* 139 F.2d 427, 428 (4th Cir. 1943); *Syah* v. *Johnson,* 247 Cal. App. 2d 534, 545 (1966); *Fogo* v. *Steele,* 180 Kan. 326, 328 (1956); *Deck* v. *Sherlock,* 162 Neb. 86, 92-93 (1956); *Elliott* v. *Harding,* 107 Ohio St. 501, 506-508 (1923); *Hopkins* v. *Droppers,* 184 Wis. 400, 412 (1924). See also Woods, Negligent Entrustment: Evaluation of a Frequently Overlooked Source of Additional Liability, 20 Ark. L. Rev. 101, 109-113 (1966); 8 Am. Jur. 2d, Automobiles and Highway Traffic § 573 (1963).

A careful reading of the pertinent Maine decisions reveals that they adopt the same standard for legal causation. See *Kelley* v. *Thibodeau,* 120 Me. 402, 405 (1921) (defendant's liability for entrustment to an inexperienced driver based on a showing that the entrustee drove at an unreasonable and dangerous rate of speed and without regard to the safety of pedestrians); *Cullinan* v. *Tetrault,* 123 Me. 302, 304 (1923) (suggestion that drugstore owner might be liable for entrusting care of his store to a "manifestly incompetent" teenager, but only where the incompetence was not obvious to plaintiff); and *Sweet* v. *Austin, supra* (suggesting that the jury's determination of the negligence, or lack thereof, on the part

three hours. A is subject to liability if the excessive speed at which the car is driven causes harm to travelers on the highway.

"6. A sells or gives an automobile to B, his adult son, knowing that B is an epileptic, but that B nevertheless intends to drive the car. While B is driving he suffers an epileptic seizure, loses control of the car, and injures C. A is subject to liability to C."

of the entrustee would control the question of causation and liability of the entrustor).

In the instant case the judge's charge as to Alger's liability, although exemplary in all other respects, was deficient in explaining the specific elements of negligent entrustment, in particular (and what is crucial to the determination of this appeal) its causation requirement. As a result, the jury were left in the dark on the relationship between Lebida's conduct and Alger's responsibility. The instruction that Alger could be found negligent "in letting Mr. Lebida use the sled" together with the instruction that the defendants would be responsible if "the result that occurred . . . [was] within the risk that was created by their negligence" permitted the jury to conclude incorrectly that Alger could be found liable for entrustment apart from Lebida's proper or improper handling of the machine. The problem stemmed from counsels' failure to make it clear throughout the trial that the case against Alger was being tried as one for negligent entrustment. It was only after the verdicts were in, and then in an effort to save the results, that the complaint was amended to insert negligent entrustment as the foundation of the case against Alger. Despite the lack of trial counsels' help in elucidating the governing law, the case still required "full . . . correct and clear instructions as to the principles of law governing all the essential issues presented, so that the jury may understand their duty and be enabled to perform it intelligently." *Buckley* v. *Frankel,* 262 Mass. 13, 15 (1928). Although the instructions as to ordinary negligence applicable to Lebida's conduct were, on the evidence against him at the trial, substantially accurate, the charge viewed as a whole was flawed and left the jury in a position where they could not properly analyze the case against either defendant or understand the basis for their verdicts. "[W]here a portion of the charge incorrectly states the applicable law, the accuracy of the charge as a whole may be affected." *Wilson* v. *Boston Redev. Authy.,* 366 Mass. 588, 592 (1975). *Posner* v. *Minsky,* 353 Mass. 656, 660 (1968). The lack of sharp and clear distinctions in

the charge on the principal issues invited inconsistent results and requires reversal.

2. The plaintiff speculates that the jury may have reached their verdicts by finding that Alger failed to warn him of the operator's inexperience, or by finding that Alger failed to instruct him "concerning where to place his feet in the snowmobile [and] the danger attendant on not doing so." Neither of these theories was expressly argued to the jury, included in any fashion in the judge's charge, or incorporated into the case by the posttrial amendments to the complaint which were purposely designed to conform the pleadings to the evidence. Compare *Wolfe* v. *Ford Motor Co.*, 6 Mass. App. Ct. 346, 353-355 (1978). The verdicts cannot be supported by a hypothesis which was neither tried nor passed upon by the jury. *Minot* v. *Boston*, 201 Mass. 10, 14 (1909). In this respect, there can be "no pretense that the verdict . . . expresses any idea which the jury had, much less anything they intended to express" (*id.*), concerning Alger's failure to warn Kunkel that Lebida may have been a novice snowmobile driver. Moreover, there is not a shred of evidence that would have warranted a conclusion that Alger had failed to advise Kunkel about Lebida's inexperience or that, if Kunkel had known this fact, he would not have accepted the ride. In our view, this assertion is an afterthought designed to solve the problem with the verdicts, without proof to advance the notion beyond the realm of conjecture.[9] Compare *Williams* v. *Fontes*, 9 Mass. App. Ct. 882, 883-884 (1980), with *Zezuski* v. *Jenny Mfg. Co.*, 363 Mass. 324, 328-30 (1973).

---

[9] Nor is there any support in the record for the theory that a snowmobile is an inherently dangerous instrumentality. The evidence was directly the contrary, to the effect that children as young as ten years old could operate a machine safely with a minimum of training. Moreover, Maine does not require snowmobile operators to be licensed, or require an adult to accompany a child operator ten or older when the vehicle is driven upon private property. See Me. Rev. Stat. Ann. tit. 12, § 1978 (as amended through St. 1973, c. 613, §§ 10-15); see also Me. Rev. Stat. Ann. tit. 12, §§ 7823, 7827 (1979).

The plaintiff's failure-to-instruct theory (which also appears to be an afterthought) similarly lacks an adequate evidentiary basis. At several points in his direct examination, Kunkel was asked whether he had been "instruct[ed] . . . with respect to being a passenger on that motor vehicle?" On each occasion he testified that he had no memory on the subject. On cross-examination he was expressly asked: "Just to straighten it out, when you were answering . . . questions about conversations about where to put your feet and loose clothing and things of that nature, it was not your testimony that these things did not take place. You meant that you just don't remember, isn't that so?" He replied, "That's correct." The defendants Alger and Lebida, and their witness Alger's son, each testified that the plaintiff had been instructed, among other safety precautions, to keep his feet within the stirrups provided on the machine for the protection of a passenger's feet. While the jury were free to disbelieve this testimony by the defendants and their witness, there was no affirmative evidence upon which to base a conclusion that Kunkel had not been instructed to keep his feet in the stirrups. It is settled that mere disbelief of testimony does not constitute evidence to the contrary. A case lacking adequate affirmative proof is insufficient to support a verdict in favor of the party with the burden on the issue. *Wakefield v. American Sur. Co.,* 209 Mass. 173, 177 (1911). *McDonough* v. *Vozzela,* 247 Mass. 552, 558 (1924). *Carmichael* v. *Carmichael,* 324 Mass. 118, 121 (1949). *Sutherland* v. *Scardino,* 334 Mass. 178, 181-183 (1956). *O'Connell* v. *Esso Standard Oil Co.,* 337 Mass. 639, 642 (1958). *Morse* v. *Selectmen of Ashland,* 7 Mass. App. Ct. 739, 750 (1979). See also Leach & Liacos, Massachusetts Evidence 314 (4th ed. 1967).

3. We reach the question of disposition. Only the judgment against Alger is before us; he is entitled to a new trial solely on the negligent entrustment claim. Although the plaintiff seasonably sought a new trial against Lebida, he had not appealed from the denial of that motion or from the

judgment entered on the jury verdict in Lebida's favor, thereby barring consideration as of right of the common remedy in a case with inconsistent results — namely that of new trials on the claims against the owner and operator. No one has raised the possible preclusive effect of the Lebida judgment on the retrial of the plaintiff's negligent entrustment claim against Alger. See generally Restatement (Second) of Judgments § 61.1 (Tent. Draft No. 5, 1978). See also *Rudow* v. *Fogel,* 376 Mass. 587, 591-592 (1978); *Boyd* v. *Jamaica Plain Co-op. Bank,* 7 Mass. App. Ct. 153, 159-160 (1979); Restatement (Second) of Judgments § 68 (Tent. Draft No. 4, 1977). In the absence of briefing on the issues implicit in that question, or the opportunity for the parties, particularly Lebida, to be heard thereon, we leave problems that might arise to be passed upon by the judge in the Superior Court. The plaintiff, if he chooses, may seek resolution of the matters, either by seasonably seeking reconsideration of the sixth ground of his motion for new trial or by a motion testing the appropriateness of relief under Mass.R.Civ.P. 60(b)(5) or 60(b)(6), 365 Mass. 829 (1974). See Smith & Zobel, Rules Practice §§ 59.6, 60.13 & 60.15 (1977); 11 Wright & Miller, Federal Practice and Procedure § 2863 (1973). We express no view on the disposition of such requests. Finally, at retrial, the deposition testimony of the game warden concerning the entry in his report as to the accident's cause is to be excluded for the reasons discussed in *Julian* v. *Randazzo,* 380 Mass. 391, 392-394 (1980).

The amended judgment entered on June 12, 1978, against Alger is reversed, and the verdict on which it is based is set aside. The case is to stand for further proceedings in the Superior Court consistent with this opinion. Neither party is to have costs of appeal.

*So ordered.*