COMMONWEALTH vs. ABELARDO GUADALUPE.

Bristol. October 9, 1986. — November 6, 1986.

Present: GRANT, KASS, & WARNER, JJ.

*Insanity. Evidence,* Insanity, Relevancy and materiality. *Error,* Harmless.

Discussion of a criminal defendant's failure to comply with Mass.R. Crim.P. 14(b) (2) (A), requiring him to notify the prosecution of his intent to raise an insanity defense, and the effect on the defendant's right subsequently to introduce evidence of his lack of criminal responsibility at the time of the commission of the crime. [99-100]

A defense of lack of criminal responsibility need not be presented by psychiatric testimony, but may be raised by introducing any evidence which might create a reasonable doubt regarding the defendant's criminal responsibility at the time of the crime. [100-101]

The judge in a criminal case did not abuse her discretion by excluding proffered testimony of two witnesses respecting the defendant's lack of criminal responsibility, where it was apparent that the witnesses' testimony would concern behavior of the defendant which they had observed two to three years before the criminal conduct. [101]

At the trial of an indictment charging armed robbery, the judge's blanket exclusion of proffered testimony by the defendant with respect to his mental condition at the time of the crime constituted reversible error. [101-102]

INDICTMENT found and returned in the Superior Court Department on June 14, 1983.

The case was tried before *Elizabeth J. Dolan, J.*

*Thomas C. Federico,* Committee for Public Counsel Services, for the defendant.

*Eva Marie Mancuso,* Assistant District Attorney, for the Commonwealth.

KASS, J. Convicted by a jury of armed robbery, Abelardo Guadalupe seeks reversal of the judgment and a new trial on the ground that the trial judge improperly precluded him from introducing evidence concerning his sanity at the time of the crime.

There had been no pretrial notice to the prosecutor, as called for by Mass.R.Crim.P. 14(b) (2) (A), 378 Mass. 878 (1979), of intention to rely upon the defense of lack of criminal responsibility because of mental disease or defect at the time of the alleged crime. On the second day of trial, counsel for Guadalupe (there was a codefendant who was tried simultaneously) proffered two witnesses, a woman friend with whom Guadalupe had lived and Guadalupe's sister. Each proposed witness was to describe conduct of Guadalupe tending to prove his longtime mental illness and, by implication, his lack of mental responsibility at the time the crime was committed. After a voir dire, the trial judge said she would exclude testimony along the lines of what the women had offered.

1. *When may the defense of criminal responsibility be raised?* Although it was not the principal ground relied upon by the judge, we pause to consider whether a defendant may raise a question of criminal responsibility, i.e., an insanity defense, after the trial has started and, indeed, in this case, after the prosecution had rested.[1] Prior to adoption of the Massachusetts Rules of Criminal Procedure in 1979, the defense of insanity was open to the defendant throughout the trial. *Chin Kee* v. *Commonwealth,* 354 Mass. 156, 158 (1968). Cf. *Commonwealth* v. *Monico,* 396 Mass. 793, 798 (1986). The idea underlying the principle was that the defense of insanity so reaches "the very heart of criminal responsibility" (*Chin Kee* v. *Commonwealth, supra*) that, even if the defense surfaces belatedly, and, indeed, surprises the prosecution, it is better to explore the issue. The "any time" rule was not unalloyed. If the Commonwealth asked for, and received, a pretrial order requiring a defendant to disclose whether he intended to raise a question of insanity, the defendant would ordinarily be bound by an

---

[1] Once the question of lack of criminal responsibility is raised by the defendant, the burden of proving the defendant's sanity at the time of the crime falls on the prosecution. An "insanity defense" may, therefore, be a semantic misnomer. Yet putting in question the defendant's mental responsibility constitutes a defensive act to the crime charged and we find it helpful to think in terms of an "insanity defense." See *Commonwealth* v. *Kostka,* 370 Mass. 516, 531-533 (1976).

express disclaimer. See *Blaisdell* v. *Commonwealth,* 372 Mass. 753, 767 (1977).

Under Mass.R.Crim.P. 14(b) (2) (A), 378 Mass. 878 (1979), a defendant who intends to rely on an insanity defense must notify the prosecution in writing during the pretrial motion stage of the proceedings.[2] Notice must include whether the defendant will offer expert testimony, the names and addresses of the expected experts, and whether those experts intend to rely on statements of the defendant bearing on mental state at the time of the crime. Mass.R.Crim.P. 14(b) (2) (A) (i)-(iii) (1979). At first — but fleeting — blush, the rule makes prior notice a condition of invocation of an insanity defense. Upon closer reading it is not so absolute.

Paragraph (c) of rule 14, which bears the caption "Sanctions for Noncompliance," provides that "[t]estimony of the defendant and evidence concerning the defense of lack of criminal responsibility which is otherwise admissible cannot be excluded except as provided by subdivision (b) (2) of this rule." Mass.R.Crim.P. 14(c) (2), 378 Mass. 880-881 (1979). What may be excluded under subdivision (b) (2) is expert testimony proffered by the defendant,[3] and then only in circumstances when the defendant has refused to submit to a court-ordered psychiatric examination. See Mass.R.Crim.P. 14(b) (2) (B) (iv), 378 Mass. 880 (1979); Smith, Criminal Practice and Procedure § 1434 (2d ed. 1983). The reason for the rule is not elusive. It is one thing to require the government to grapple with an insanity defense that arises unforeseen from developments in the case; it is another to ambush it with the testimony of experts who, perforce, have prepared in advance. If the defense expects to trot out expert witnesses, it is only reasonable that the government should have foreknowledge and opportunity for research and consultation with its own experts. See Reporters' Notes

---

[2] Rule 14(b) (2) is thought by the reporters on the rules to codify much of what was discussed in the *Blaisdell* case. See Reporters' Notes to Mass.R.Crim.P. 14(b) (2), Mass. Ann. Laws, Rules of Crim. Procedure at 308 (1979).

[3] Expert or lay testimony may be offered by the Commonwealth in response to an insanity defense made without pretrial notice.

to Mass.R.Crim.P. 14(b) (2), Mass. Ann. Laws, Rules of Crim. Procedure at 308 (1979), which comment on the difficulty of rebutting, without advance preparation, expert testimony about lack of criminal responsibility. If the defendant submits to a court-ordered psychiatric examination, the defense may even offer expert testimony of which it had not given pretrial notice. See Mass.R.Crim.P. 14(b) (2) and 14(c), 378 Mass. 878, 880 (1979).

Comparison with the alibi notice portion of rule 14(b) (i) is instructive. Subparagraph (D) expressly authorizes the trial judge to exclude the testimony of any alibi witness who has not been disclosed to the prosecution before trial. Should the defendant testify on his own behalf, he may say he was elsewhere, but that poses no particular problem to the prosecution since it is bound, as part of its direct proof, to place the defendant at the scene of the crime, if presence is an issue.

In allowing leeway for presentation, without proper prior notice, of nonexpert testimony about lack of criminal responsibility, Mass.R.Crim.P. 14(b) deviates from the Federal model on which it is based, Fed.R.Crim.P. 12.2(a). The latter provides that "[i]f there is a failure to comply with the requirements of this subdivision, insanity may not be raised as a defense." Under the Massachusetts formulation, the evidence Guadalupe sought to introduce was not banned for failure to give timely pretrial notice.

2. *How may the insanity defense be raised?* Although the insanity defense classically pitches opposing batteries of experts into battle, it is settled that a defense of lack of criminal responsibility does not require psychiatric testimony. *Osborne* v. *Commonwealth,* 378 Mass. 104, 112 (1979). *Commonwealth* v. *Louraine,* 390 Mass. 28, 35-36 (1983). *Commonwealth* v. *Monico,* 396 Mass. at 798. "The issue may arise from the facts of the case, through the Commonwealth's witnesses, through lay testimony, or any combination thereof." *Ibid.* A defendant may raise the insanity defense by introducing any evidence which might create a reasonable doubt regarding his criminal responsibility at the time of the crime. *Commonwealth* v. *Laliberty,* 373 Mass. 238, 246-247 (1977). Recipro-

cally, the Commonwealth may rely on other than expert testimony. *Commonwealth* v. *Cullen,* 395 Mass. 225, 229-230 (1985). Prior history of mental disorder, medical records including tests such as brain scans, the facts of the crime, and aberrant conduct or statements of the defendant are examples of nonexpert evidence from which a finder of fact may draw inferences about the defendant's sanity. *Blaisdell* v. *Commonwealth,* 372 Mass. at 765.

On this point the trial judge appears to have labored under a misapprehension. "[L]ack of criminal responsibility," she said, while considering what had been offered through the lay witnesses, "is something that must be addressed by an expert witness and after examination."

3. *The rejected testimony.* Although the evidence was not to be excluded because it lacked the varnish of expertise, the judge acted within the scope of her discretion in declining the proffered testimony of Guadalupe's former woman friend and of his sister. Both spoke of behavior they had observed two to three years before the crime. The judge could — and did — consider that the relative remoteness in time of the behavior the witnesses sought to describe vitiated its probative value. Temporal proximity is a factor a judge, in her discretion, may consider in ruling on the admissibility of evidence. *Commonwealth* v. *Chasson,* 383 Mass. 183, 187 (1981). *Commonwealth* v. *Palmariello,* 392 Mass. 126, 137 (1984).

Guadalupe's own testimony was improperly curtailed. It would have etched the issue more sharply had defense counsel explicitly stated that the main line of defense would be lack of criminal responsibility. The questions put to the sister, the woman friend, and the defendant could not, however, have left the judge in doubt about the defense theory being pursued. Indeed, it is apparent from the record that the judge did understand that the defense was trying to examine, and the defendant was trying to testify, about his mental health history and that she regarded it as "not an admissible line of questioning." [4]

---

[4] Some of the defendant's rambling testimony was properly struck because it was volunteered and because it was directed more to his mental condition

Specifically, Guadalupe sought to testify that he "used to hear noises," that he was better now that he was under a psychiatrist's care, that he had been in and out of mental hospitals. He was not permitted to answer questions whether he had been treated for any illness in 1982 and whether in December, 1982, he had visited a mental health clinic in New Bedford. Treatment for an illness and a visit to a mental health clinic do not, in themselves, establish lack of criminal responsibility. The trial judge would have been entitled to inquire of defense counsel about where the questions were going and to have excluded them if the defense failed to link the anticipated answers to the issue of criminal responsibility. Blanket exclusion of the proffered testimony, however, as touching on an off-limits subject, was contrary to the principle that a defendant is entitled to place before the jury any and all nonexpert evidence which is at all probative of his mental condition at the time of the crime. *Commonwealth* v. *Louraine*, 390 Mass. at 34, and cases and authorities cited. See also *Commonwealth* v. *Schulze*, 389 Mass. 735, 740 (1983). As the defendant was foreclosed from answering any questions directed to his mental responsibility when the crime was committed, there is no way of knowing whether the evidence which might have been developed would have been sufficient to require the judge to put to the jury the question whether the defendant lacked responsibility for his criminal acts. See *Commonwealth* v. *McInerney*, 373 Mass. 136, 152 (1977); *Commonwealth* v. *Mattson*, 377 Mass. 638, 641-645 (1979).

*Judgment reversed.*

*Verdict set aside.*

---

at trial than at the time the crime occurred. The defendant's mental competence to stand trial, as distinguished from his mental responsibility at the time the crime occurred, had been determined by another judge. The trial judge rightly concluded that nothing had occurred which required her to reexamine that question. Cf. *Commonwealth* v. *Hill*, 375 Mass. 50 (1978).