## COMMONWEALTH vs. ORESTES LORA.

No. 96-P-623.

Suffolk. January 6, 1997. - July 10, 1997.

Present: SMITH, GREENBERG, & FLANNERY, JJ.

*Practice, Criminal,* Instructions to jury. *Necessity. Evidence,* Medical record, Relevancy and materiality. *Motor Vehicle,* License to operate.

This court stated that, in the future, in a criminal case in which the defendant raises the defense of necessity, the trial judge should rule in the first instance whether the Legislature has acted to preclude or limit the defense by a "clear and deliberate choice between the competing values involved" and should modify Model Jury Instruction 6.02 (1988), if given, accordingly. [138-140]

In the circumstances of a criminal trial in which the defendant raised the defense of necessity, error in the judge's submitting to the jury the issue whether the Legislature had ruled out the availability of the defense in such circumstances was not demonstrated to be prejudicial to the defendant. [141]

At the trial of a criminal complaint in which the defendant raised the defense of necessity based on his medical condition, the judge erred in excluding on the ground of remoteness medical records of the defendant that were relevant to his claimed defense, however the error was harmless where other evidence of the defendant's medical condition was admitted for the jury's consideration. [141-143]

Sufficient evidence was presented at the trial of a complaint for operating a motor vehicle after suspension of license to warrant the jury's conclusion that the defendant had received notice from the Registrar of Motor Vehicles that his license to operate had been suspended. [143-144]

COMPLAINT received and sworn to in the Roxbury Division of the District Court Department on October 11, 1994.

The case was tried before *Gregory L. Phillips,* J.

*Douglas J. Beaton* for the defendant.

*Nancy L. Hathaway,* Assistant District Attorney, for the Commonwealth.

GREENBERG, J. A complaint charged the defendant, Orestes Lora, with a violation of G. L. c. 90, § 23. The second paragraph of the statute reads in pertinent part:

"Any person convicted of operating a motor vehicle after his license to operate has been suspended or revoked, . . . or after notice of the suspension or revocation of his right to operate a motor vehicle without a license has been issued by the registrar and received by such person or by his agent or employer, and prior to the restoration of such license . . . shall be punished . . . ."[1]

At trial by a jury of six in the Roxbury District Court, the Commonwealth established the following. On October 7, 1994, Officer Jack Marotta of the Boston police department observed the defendant driving a black 1989 Ford Probe automobile on Melnea Cass Boulevard in the city of Boston. The officer stopped the defendant for making an illegal left hand turn onto Washington Street. The defendant was unable to produce his driver's license. A computer check revealed that the defendant's license had been suspended for drunk driving. So apprised, the officer placed the defendant under arrest. On the citation, he listed the defendant's address as 20 East Brookline Street in Boston.

The Commonwealth introduced in evidence certified copies of documents from the Registry of Motor Vehicles. One such document, the notice of suspension sent to the defendant, listed his address as Box 312, Line Street, Boston, MA 02118. In contrast, another document containing the defendant's driving history listed two additional addresses: (1) a mailing address as Box 312 Line Street, Boston, MA 02143; and (2) a residential address as 20 E. Brookline Street, Apt. 84, Boston, MA 02118-1988. Contending that he never received notice of the suspension of his license, the defendant moved for a required finding of not guilty at the close of the Commonwealth's case. The judge denied the motion.

For the defense, Juan Santiago, a friend of the defendant, testified that about 4 p.m. on the day of the arrest, the defendant appeared at his home "very ill." He testified that the defendant's complexion was pallid, his hands and feet swollen, and that the defendant had complained of severe pain. Santiago loaned the defendant ten dollars to purchase medicine. Because Santiago refused to go to the pharmacy for him, the defendant drove away himself, presumably to make the purchase.

---

[1]The defendant was also charged with a civil motor vehicle violation for disobeying a traffic signal (720 Code Mass. Regs. § 9.06[23] [1986]). No appeal was taken on that charge.

The defendant took the witness stand. He testified, in effect, that he suffers from rheumatoid arthritis, poor circulation, and high blood pressure. He stated that on the day in question, he felt as if he "wanted to die," and he had exhausted his supply of Motrin, a pain killing medication prescribed by his health care provider. The defendant explained that necessity compelled him to drive himself to the pharmacy; he could not afford a taxi, his housemate, Luiz Colon, did not drive, and Santiago was unwilling to do the errand. After deliberation, the jury rejected this defense and found him guilty.

1. *Instructions on the defense of necessity.* The judge instructed the jury in the language set out in the margin.[2] In so doing, he tracked the language of Model Jury Instruction 6.02 (1988) used in the District Court. Before the charge, defense counsel objected to the fourth factor of the instruction. He asked that the jury be told that the Legislature had not made a determination of values that would rule out his defense in these circumstances. The judge refused the request. The charge was exemplary in all respects except, as the defendant argues, it left the jury to determine whether the Legislature had ruled out the defense in the circumstances of this case. We agree with the defendant that this was error.

The defendant argues that leaving unanswered the question whether the statute permits the defense, requires the jury to

---

[2] "Four factors must be present for the rule of necessity to apply. First, that the defendant was faced with a clear and imminent danger; not one that was debatable or speculative.

"Second, that the defendant reasonably expected that his actions would be effective indirectly reducing or eliminating the danger.

"Third, that there was no legal alternative which would have been effective to reduce or eliminate the danger.

"*And fourth, that the legislature had not ruled out the [sic] necessity as an excuse in these circumstances by making a clear and deliberate choice between the competing values involved* [emphasis added].

"Before you find the defendant guilty, the Commonwealth must prove that the defendant, in fact, committed the offense, and must also prove beyond a reasonable doubt that one or more of those four factors were present [*sic*], and therefore the defendant did not act out of necessity."

This last sentence should have read "were absent." The judge reinstructed correctly on this point.

engage in an exercise beyond its institutional competence.[3] As such, the defendant claims a violation of his due process rights.

The common law defense of "necessity" is often referred to as the "choice of evils" defense. LeFave & Scott, Handbook on Criminal Law § 5.4, at 442 (2d ed. 1986). In essence, it involves a judgment as to whether public policy concerns eclipse those values protected by the law, rendering punishment under the criminal law inappropriate. *Commonwealth* v. *Hutchins*, 410 Mass. 726, 730 (1991). The defense exonerates a defendant where the harm resulting from a violation of the law is significantly less than the harm that compliance would have wrought.[4] *Commonwealth* v. *Brogan*, 415 Mass. 169, 175 (1993). *Commonwealth* v. *Brugman*, 13 Mass. App. Ct. 373, 376-377 (1982). See, e.g., *Commonwealth* v. *Iglesia*, 403 Mass. 132, 134 (1988) (evidence sufficient to raise issue of necessity as defense to unlawful carrying of firearms where, under threat of immediate use, defendant seized weapon and immediately fled to safety). Contrast *Commonwealth* v. *Hood*, 389 Mass. 581, 593 (1983) (because threat of nuclear war not an obvious and generally recognized harm defense not recognized); *Commonwealth* v. *Hutchins*, 410 Mass. at 732 (alleviation of medical symptoms would not clearly outweigh potential harm to public from not punishing cultivation of marijuana); *Commonwealth* v. *Leno*, 415 Mass. 835, 839-841 (1993) (possibility of contracting AIDS in future not imminent harm which would justify operation of needle exchange program in violation of statutes restricting possession and distribution of hypodermic needles).

Neither party has cited any case, nor have we found one, where a jury has found the defense of necessity not available on grounds of legislative intent. That determination has only been made by a judge, as a preliminary ruling.[5] See *State* v. *Dorsey*, 118 N.H. 844

---

[3]The function of a jury is "to decide or determine the facts of the case from the evidence adduced . . . ." 47 Am. Jur. 2d, Jury § 15 (1988). Jury instructions serve to "inform the jury of its function, which is the independent determination of the facts, and the application of the law, as given by the court, to the facts found by the jury." 2 Wright & Miller, Federal Practice and Procedure § 485, at 711 (1982).

[4]If the question is properly raised, the prosecution has the burden to prove the absence of justification beyond a reasonable doubt. See *Commonwealth* v. *Robinson*, 382 Mass. 189, 200-201 (1981), and cases cited.

[5]No Massachusetts court has yet precluded the defense based on a determination that the Legislature has statutorily ruled it out.

(1978) (at trial, judge ruled defense of necessity unavailable where foreclosed by legislative intent); *State v. Tate*, 102 N.J. 64 (1986) (legislative intent regarding possession of marijuana for medical reasons was matter for interlocutory review); *Bird v. Anchorage*, 787 P.2d 119, 121-122 (Alaska App. Ct. 1990) (judge determined Legislature had already balanced competing values and refused to instruct on necessity); *State v. Hanson*, 468 N.W.2d 77 (Minn. App. Ct. 1991) (where defendant gave notice that he would present defense of medical necessity court held offer of proof hearing and ruled defense unavailable because Legislature excluded it in this situation).

As we have stated in the instant case, nothing appears in the statute demonstrating that the Legislature has acted to preclude or limit the defense by a clear and deliberate choice regarding the values at issue.[6] In cases such as this, where the statute provides no clear guidance, judges should prevent jurors from engaging in an exercise of legislative interpretation. A judge should either omit the fourth element from the charge, or inform the jury that the Legislature has left the defense available, leaving the jury to decide whether the evidence satisfies the first three elements so as to justify the defendant's violation of the law.[7]

---

[6]For cases analyzing statutes in which the Legislature has made a value choice, see *State v. Tate*, 102 N.J. at 71; *State v. Hanson*, 468 N.W.2d at 78-79.

[7]The judge's preliminary ruling may elicit one of two other possibilities as well. First, an examination of the statute may reveal that the Legislature has entirely precluded the availability of the defense. LeFave & Scott, Criminal Law § 5.4, at 442-443 (2d ed. 1986). In this situation, as a matter of law, the Legislature has made it unavailable so that the judge should not instruct the jury on the defense of necessity. See *id.* at 442. Second, the judge may find that the Legislature has expressly provided that the defendant may invoke the defense of necessity in certain limited circumstances. For example, in *State v. Tate*, 102 N.J. at 71, the language of the relevant statute read, "It is unlawful for any person, knowingly or intentionally, to obtain, or to possess, actually or constructively, a controlled dangerous substance *unless such substance was obtained directly, or pursuant to a valid prescription or order from a practitioner, while acting in the course of his professional practice . . .*" (emphasis added). In this instance, the judge should instruct the jury as to the first three elements and inform them that the Legislature has limited the availability of the defense; the jury must then determine whether or not the evidence presents facts to bring the defendant within that limited circumstance so as to avail herself of the defense. See also *State v. Hanson*, 468 N.W.2d at 78 (medical necessity defense to prohibition against possession or use of marijuana available only for "cancer patients undergoing chemotherapy who are receiving the drug under strict controls of an approved medical research program"). In

Our inquiry does not end there. Because the defendant's trial counsel objected to this part of the instruction, we examine whether the instruction as given prejudiced the defendant. See *Commonwealth* v. *Mejia*, 407 Mass. 493, 497 (1990); Mass.R. Crim.P. 24, 378 Mass. 895 (1979).

Because the Commonwealth presented no evidence which would have permitted the jury to conclude that the Legislature had ruled out the necessity defense, the instruction could not have misled the jury. In addition, the judge properly instructed the jury that the Commonwealth had the burden to prove, beyond a reasonable doubt, that the defendant did not act out of necessity. Moreover, by addressing the particular circumstances of the defendant's medical condition, as testified to by the defendant and his witnesses, defense counsel framed the analysis of the defense of necessity for the jury. Defense counsel argued that the defendant had no choice but to drive himself to the pharmacy. In response, the prosecutor argued that the defendant's medical history was an excuse unworthy of belief.[8]

While future juries will benefit from a closer assessment of the fourth element of the defense of necessity by trial judges, in the case at bar, the jury were apprised of what proof was required. The jury were free to draw from their own common understanding and experiences in deciding whether the defendant's condition amounted to a legitimate medical necessity to drive. The error, therefore, did not prejudice the defendant. Contrast *Kunkel* v. *Alger*, 10 Mass. App. Ct. 76, 84-85 (1980) (reversal warranted where portion of charge on negligent entrustment flawed and counsel failed to clarify theory of the case).

2. *Exclusion of the defendant's medical records.* The Commonwealth objected (by motion in limine) to the admission of the defendant's medical records. Because these records did not

---

sum, regardless of whether the judge determines that the Legislature was silent, precluded the defense, or limited the defense, the jury should never be charged on the fourth element of legislative intent.

[8]This is not to suggest that arguments of counsel can cure defective instructions on the law to the jury. We only point out that, in this case, the argument of counsel carried the essential issue, raised by the defendant about his medical condition, in a clear and understandable way, further supporting our conclusion that there was no prejudice as a result of the judge's refusal to explain legislative intent to the jury.

relate to treatment on the day of his arrest, the Commonwealth argued that the information was too remote in time to be relevant.[9] We disagree.

Evidence is relevant if it renders the desired inference more probable than it would have been without it. *Commonwealth* v. *Fayerweather*, 406 Mass. 78, 83 (1989). As long as evidence "tends to establish the issue" or "constitutes a link in the chain of proof," it may be sufficiently relevant. *Poirier* v. *Plymouth*, 374 Mass. 206, 210 (1979), quoting from *Commonwealth* v. *Abbott*, 130 Mass. 472, 473 (1881).

The Commonwealth's argument misconstrues the purpose for which the evidence might be admitted. There was sufficient evidence to show that the defendant had suffered from arthritis for at least six years prior to the time of his arrest and that he had taken prescription drugs to alleviate the symptoms. There was also circumstantial evidence, not remote in time, tending to link his condition on the day in question to chronic illness, particularly the indications of recurrence observed by Santiago just before the defendant's arrest. On this evidence, the jury should have been free to consider whether the medical records corroborated the defendant's complaints.

Massachusetts courts have generally not upheld the exclusion of such evidence on the ground of remoteness.[10] See *Kramer* v. *John Hancock Mut. Life Ins. Co.*, 336 Mass. 465, 467-468 (1957) (medical evidence intended to show person suffering from ailments in 1943 and 1948 would be suffering from same ailments in 1952 improperly excluded); *Commonwealth* v. *Guadalupe*, 23 Mass. App. Ct. 97, 101 (1986) (where defendant intended to

---

[9]The medical records relate to visits the defendant made to the Uphams Corner Health Center on December 14, 1992, March 10, 1994, and October 6, 1994. The records reveal that the defendant received treatment for arthritis during the December 14, 1992, visit; it is unclear, due to the illegibility of the handwriting, whether the defendant received any treatment for arthritis at either of the other two visits.

[10]This court has held that motions in limine should not be used to curtail a valid defense. See *Commonwealth* v. *O'Malley*, 14 Mass. App. Ct. 314, 324 (1982) ("Since it can seldom be deemed irrelevant or prejudicial to allow a defendant to tell his story to the jury, motions in limine are generally used by the Commonwealth to test the admissibility, rather than the sufficiency, of particular items of anticipated evidence. . . . As a consequence, prosecutors should bear in mind that [t]he motion should be used, if at all, as a rifle and not as a shotgun. . . . *It must not be used to choke off a valid defense in a criminal action*" [emphasis added]).

assert defense of lack of criminal responsibility, court held that "[b]lanket exclusion of [testimony regarding medical treatment the defendant received in the year prior to his arrest] was contrary to the principle that a defendant is entitled to place before the jury any and all nonexpert evidence which is at all probative of his mental health"). The error was harmless, however, because there was, as we have stated, other evidence of the defendant's medical condition to guide the jury's consideration of his necessity defense. We do not think that a different result might have been reached had the excluded evidence been considered by the jury. See and compare *Commonwealth* v. *Bradshaw*, 385 Mass. 244, 274 (1982).

3. *Required finding of not guilty.* When defense counsel argued his motion for a required finding of not guilty in the trial court, he focused entirely on the alleged failure of the Commonwealth to prove that the registrar sent the notice of license suspension to the correct address.[11] He based his argument on the fact that the Registry of Motor Vehicles sent the notice to Box 312, Line Street, Boston, 02118, despite a notation in the defendant's registry record showing his residential address as 20 East Brookline Street, Boston. On appeal, appellate counsel urges an entirely different ground: that neither the mailing address listed in the registry's record of his driving history, nor the address on the notice actually exists.[12] The defendant, therefore, could not have received the notice. Because this argument was not put before the trial court, we need only consider whether the denial of the motion raises the possibility of a substantial risk of a miscarriage of justice.[13] *Commonwealth* v. *Good*, 409 Mass. 612, 617 (1991).

On the grounds briefed, there was sufficient evidence that the defendant received notice that his license had been suspended. To prove receipt of notice the Commonwealth need only prove that the registry properly mailed the notice. See *Commonwealth* v. *Koney*, 421 Mass. 295, 303-304 (1995).

[11]General Laws c. 90, § 23, places the burden on the Commonwealth to prove that the defendant received a notice of revocation or suspension. *Commonwealth* v. *Crosscup*, 369 Mass. 228, 242 (1975).

[12]Box 312 Line St., Boston, MA 02118 is not a proper address as there is no Line St. in Boston; Box 312 Line Street, Boston, MA 02143 is not a proper address as Somerville, not Boston, is the city designated by the 02143 zip code.

[13]We consider the defendant's prior contention waived. *Commonwealth* v. *Good*, 409 Mass. at 617; Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).

It was certainly open to the jury to infer that the registrar sent the notice of suspension to a proper address. General Laws c. 90, §§ 8 and 26A, required the defendant to provide the registry with his address. These provisions would be meaningless if the registry is not permitted to rely on the accuracy of the information provided thereunder. If the mailing address was incorrect, the defendant should have corrected it. Cf. *Commonwealth* v. *Francis*, 374 Mass. 750, 753-754 (1978) (Commonwealth not precluded from prosecuting defendant's case where clerk's office took all reasonable steps to effect notice when it sent notice to defendant's last known address and defendant failed to notify court of any change). See also *Commonwealth* v. *O'Clair*, 374 Mass. 759, 764 (1978) (same); *Commonwealth* v. *Hampton*, 26 Mass. App. Ct. 938, 940 (1988), to the same effect.

*Judgment affirmed.*