DENNIS FORD & others[1] *vs.* BOSTON HOUSING AUTHORITY
& another.[2]

No. 99-P-2126.

Suffolk. February 7, 2002. - August 20, 2002.

Present: JACOBS, KASS, & BERRY, JJ.

*Housing Authority. Massachusetts Tort Claims Act. Fire. Negligence, Fire,* Stairway, Expert opinion. *State Building Code.*

Where a building owned by the defendant housing authority was not in compliance with the State Building Code, the housing authority was not immune from liability under the discretionary function provision of G. L. c. 258, § 10(*b*). [624-626]

In a civil action brought by a plaintiff who was injured while fleeing from a fire in an apartment building owned by the defendant housing authority, the judge had discretion to allow the plaintiff's expert to give an opinion whether the fact that a door to the roof of the building was locked would constitute a violation of the State Building Code, given the complexity of the building code and given the fact that the issue of violation of the building code was not the ultimate issue in the case and its resolution did not resolve the ultimate issue of negligence to be decided by the jury; moreover, even assuming error in the admission of the testimony, the defendant did not demonstrate that it had been prejudiced thereby. [626-627]

CIVIL ACTION commenced in the Superior Court Department on May 12, 1994.

The case was tried before *Peter M. Lauriat,* J.

*Stephen J. Gill* for Boston Housing Authority.

*Dante G. Mummolo* for Dennis Ford.

JACOBS, J. In May, 1992, Dennis Ford (plaintiff) was injured while fleeing from a fire in an apartment building owned by the Boston Housing Authority (BHA). At the time, he was visiting a friend who lived in the building. The friend's young nephew

---

[1]Jean Ford, Valerie Ford, Dennis R. Ford, Jr., and Lisa Ford.
[2]City of Boston.

had accidentally started the fire in a mattress. The friend asked the plaintiff to hold the door to the hallway open while he threw the mattress into the hallway and went back into his apartment to get water to douse the flames. When the friend returned, the mattress burst into flames and the plaintiff retreated, unable to return to the apartment. His path to the only stairway down to the main entrance was blocked by the fire. In seeking an exit, he turned to a doorway which he recalled led to a stairway to the roof, but it was locked. Unable to gain entry to another apartment, he opened a window and climbed out holding onto a ledge, but fell when he was unable to reach a ladder which had been raised by fire fighters.

The plaintiff filed a complaint in the Superior Court in May, 1994, under the Massachusetts Tort Claims Act, G. L. c. 258, alleging the BHA negligently failed to provide more than one means of egress from the building. After trial in May, 1997, the jury returned a verdict in favor of the plaintiff.[3] In this appeal challenging the denial of its motion for a directed verdict,[4] the BHA, relying on *Wheeler* v. *Boston Hous. Authy.*, 34 Mass. App. Ct. 36 (1993), contends that its decision in 1982 or 1983 to lock the doors to the roof of the building for security and safety reasons is the type of discretionary action that exempts it from liability under the discretionary function provision of G. L. c. 258, § 10(*b*).

This reliance on *Wheeler* is misplaced. In that case, it was alleged that the BHA negligently failed to provide adequate security for persons lawfully on the premises, including failing to secure the front door and the door leading to the roof. The plaintiff there was injured during an exchange of gunfire between unknown persons on the rooftop and in the parking area. We held that the discretionary function exception was applicable because there were no prescribed statutory, regulatory,

---

[3]The jury returned a verdict for the plaintiff of $225,000, which was reduced to $100,000 by operation of G. L. c. 258. The jury found against Jean Ford on her consortium claim. The record does not indicate the resolution of the consortium claims of the other plaintiffs. Separate claims against the city of Boston were dismissed after its motion for a directed verdict was allowed.

[4]Because of our decision, we do not address the plaintiff's argument that the BHA waived its right to appeal by not renewing its motion for directed verdict at the close of all the evidence.

or established agency practices governing security measures to protect persons on BHA properties from criminal activity. *Id.* at 38-39.

The BHA seeks in this case to bring the locking of the roof door within the discretionary function exception by asserting that the door was locked to prevent criminal activity and to eliminate the potential for accidents which might result if tenants had access to the roof. The BHA cites the testimony of its program services coordinator, that the roof door was locked in 1982 or 1983, for what he termed security and safety reasons, after he had been directed to secure it. Although the issue is not central to our resolution of the case, that vague testimony does not necessarily indicate that the decision was "an integral part of governmental policy making or planning," *Wheeler* v. *Boston Hous. Authy.*, *supra* at 39, or one which can be "characterized by a 'high degree of discretion and judgment involved in weighing [security] alternatives and making choices with respect to public policy and planning.' " *Id.* at 40, quoting from *Whitney* v. *Worcester*, 373 Mass. 208, 218 (1977).

Central to the plaintiff's claim in this case is evidence that the building was not in compliance with the State Building Code. That code provides that buildings, such as the one at issue here, must have two means of egress. See 780 Code Mass. Regs. §§ 809.2, 3203.7 (1992). A violation of the code is evidence of negligence as to the consequences the code and its regulations were intended to prevent. See *Perry* v. *Medeiros*, 369 Mass. 836, 841 (1976), and cases cited. Unlike in *Wheeler*, where the BHA was determined to be exempt from a statute which mirrored provisions of the State Sanitary Code, here the BHA cites no exemption, nor are we aware of any, from the State Building Code. "The first step in deciding whether a plaintiff's claim is foreclosed by the discretionary function exception of [G. L. c. 258, § 10(*b*),] is to determine whether the governmental actor had any discretion at all as to what course of conduct to follow. . . . [I]f the governmental actor had no discretion because a course of action was prescribed by a statute, regulation, or established agency practice, a discretionary function exception to governmental liability has no role to play in deciding the case." *Harry Stoller & Co.* v. *Lowell*, 412 Mass.

139, 141 (1992). The failure to comply with the State Building Code in this case may be seen as analogous to those cases where a public employer under G. L. c. 258, § 1, as a property owner, "has not been afforded immunity under the discretionary function exception." *Wheeler* v. *Boston Hous. Authy., supra* at 41, and cases cited.

The BHA, relying on *Perry* v. *Medeiros, supra* at 842, argues that the judge improperly allowed the plaintiff's expert to testify to the ultimate issue in the case. The expert stated, "It's my opinion that if the door was locked at the time of the accident . . . that would have been noncompliance with the State building code."[5] He further testified that the basis for his opinion was article 8 of the State Building Code, which later was introduced in evidence. *Perry* v. *Medeiros, supra,* held that an opinion by a building inspector that "the stairs upon which the plaintiff fell were . . . in violation of the [municipal] building code" was properly excluded. It did not establish an inflexible rule that expert testimony interpreting or explaining the requirements of a complicated code is impermissible. In view of the complexity of the State Building Code, the judge had discretion to admit the expert's testimony. Compare *Sullivan* v. *First Mass. Financial Corp.,* 409 Mass. 783, 793 (1991). In any event, the issue of violation of the building code was a penultimate issue in the case, and its resolution did not resolve the ultimate question of negligence to be decided by the jury. Such testimony may be offered "regarding an issue which may ultimately be submitted to the jury to decide." *Henderson* v. *D'Annolfo,* 15 Mass. App. Ct. 413, 430 (1983) (expert testimony on violations of State electrical code). See *Matteo* v. *Livingstone,* 40 Mass. App. Ct. 658, 663 (1996) ("opinion evidence may now come much closer to the ultimate issue if it will aid the jury"), and cases cited; *Puopolo* v. *Honda Motor Co.,* 41 Mass. App. Ct.

---

[5]There was no objection to the question preceding this answer, which was, "What is your opinion, sir?" The previous question to which there had been an objection was a hypothetical asking whether the witness had an opinion whether having the door locked on the day in question "would or would not be in compliance with the State building code." Although we treat the expert's response, standing alone, as not directly responsive to the hypothetical question, we give the BHA the benefit of a general objection to any request that the expert render an opinion on the subject of the State Building Code.

96, 98 & n.4 (1996) (discussing relaxation of the "old rule that prohibited experts from testifying on an issue that was ultimately for the jury to decide"). See also Liacos, Massachusetts Evidence §§ 7.1, 7.3.1 (7th ed. 1999). Even assuming error in the admission of the expert's testimony, the BHA has not demonstrated it was prejudiced, given the statements it elicited in cross-examination that the locked door was not in compliance and that two means of egress were required for the building, and its exploration of whether access to the rooftop would meet the definition of a means of egress and whether the use of a window for emergency escape would obviate the need for the roof exit.

*Judgment affirmed.*