Lauriat, J.
The Commonwealth of Massachusetts, on behalf of the Metropolitan District Commission (“MDC”), brought this action against Dana Smith (“Smith”) and his employer, P.A. Landers, Inc. (“Landers”), to recover for damages sustained to the MDC’s Woods Memorial Bridge (“the Bridge”) in Everett, Massachusetts, allegedly caused by Smith’s negligence while driving a “low-boy” tractor/trailer vehicle owned by Landers on which he was transporting a large excavator over the Bridge on the morning of November 19, 1998. The Commonwealth contended that Smith’s negligence caused the leading edge of the trailer bed to come in contact with and rip a transition joint from the Bridge, as a result of which the MDC was required to close the Bridge for a period of time and to make both emergency and permanent repairs. Smith and Landers denied that they were liable or responsible for the damage to the Bridge, and asserted, by way of a comparative negligence defense, that the MDC was itself negligent in the maintenance and repair of the Bridge.
After a seven-day trial in October and November 2002, the jury returned a verdict on special questions in which they found that Smith was negligent, that his negligence was a substantial contributing cause of the damage to the Bridge, and that the MDC was entitled to recover damages in the amount of $107,000. The juiy further determined that while the MDC was also negligent, its negligence was not a substantial contributing cause of the damage to the Bridge.
Both parties have now filed and argued several post-trial motions, each of which the court will address in turn.
I.
Smith and Landers have moved, post-trial, for judgment notwithstanding the verdict, or in the alternative for a new trial, on grounds that the juiy’s verdict was against the weight of the evidence, that the court erred in allowing issues related to Smith’s speed, lane placement and lack of a proper permit to go to the juiy, that the court erred in precluding one Ronald Dickeson from testifying, and that the verdict was the result of juiy prejudice or misconduct. Upon consideration of each of these contentions, the court concludes that they are without merit, and the defendants’ motion must be denied.
A.
The court first concludes that taken in the light most favorable to the prevailing party, there was more than sufficient admissible evidence, from both fact and expert witnesses and the exhibits, to allow the case to go to the jury and to support the juiy’s verdict. MacCormack v. Boston Edison Co., 423 Mass. 652, 658-59 (1996). The defendants’ contentions as to the speculative nature of the MDC’s evidence are not well taken. The defendants had a full and fair opportunity to cross-examine each of the MDC’s witnesses, and did so vigorously. Upon a full and fair consideration of the record of the trial before the court, there is no basis for vacating the juiy’s verdict.
B.
The court ruled at trial, and reaffirms here, that evidence of Smith’s speeding and/or being in the wrong lane on the bridge, was not precluded by reason of a District Court’s finding that Smith was “not responsible” with respect to two motor vehicle citations that were issued to him for that alleged conduct. Neither citation was ever heard or determined on its merits, rather the citations were first dismissed because the citing officer failed to appear at the District Court Clerk’s hearing, and they were again dismissed several months later, when brought forward by a second officer, on the ground of res Judicata. Even if those citations had been decided in Smith’s favor after a hearing on the merits, they would not be preclusive in the present trial, because the issues and proceedings in each case was different.
In the District Court, the determination of “responsible” or “not responsible” relates to alleged violations of motor vehicle laws, the sanction for which is a fine and a possible insurance surcharge. The District Court Clerk has no authority to impose a damage award or restitution against Smith or Landers for the destruction of the Bridge, or for the cost of its repair. Nor do the rules of civil procedure or evidence apply to the District Court determination of responsibility. In contrast, the issues to be resolved in the present case are negligence, causation and damages, in an action to be tried before a judge and jury which is governed by the Massachusetts rules of civil procedure *664 and evidence. Just as a “responsible” finding in the District Court would not be preclusive on the issue of negligence in the present Superior Court action, a “not responsible determination” in the District Court does not bar presentation of evidence concerning speed or lane travel here.
C.
Smith and Landers next contend that the evidence that they had not secured a permit from the MDC to operate the tractor/trailer truck on and over the Bridge should not have been presented to the jury as some evidence of negligence. The court disagrees. The MDC has long required that a permit be secured for any vehicle that is over a certain size or weight before that vehicle is allowed to travel on roads and bridges that are within its sphere of responsibility. Issuance of a permit carries with it the recognition and responsibility to understand and be governed by the rules and regulations of the MDC’s roadways. Through the application process, the MDC can determine whether there are or may be particular concerns about the applicant’s vehicle that need to be addressed or disclosed to the applicant. The issuance of a permit bears a rational relationship to the defendants’ use of the Bridge in the circumstances of the present case, and their failure to apply for and secure that permit was admissible as some evidence of negligence. Ford v. Boston Housing Authority, 55 Mass.App.Ct. 623 (2002).
D.
The defendants also contend that the court erred in excluding their proffered testimony of one Ronald Dickeson. If allowed to testify, the defendants assert that Dickeson would have stated that at or about 4:00 a.m. on the morning of the accident, while traveling over the Bridge in a tractor/trailer truck, he felt or sensed a large jolt. The defendants contend that this testimony would have established that the transition joint had already failed and become detached from the Bridge before Smith ever crossed it at about 10:00 a.m. that morning. After a hearing, the court excluded Dickeson’s testimony.
Under the circumstances presented by the defendants, Dickeson’s testimony was neither relevant nor material to the issue being presented. In his deposition, Dickeson could not state with any specificity the date on which he traveled over the Bridge and felt a jolt. Nor could he identify the source or cause of the jolt, nor even the particular part of the Bridge where the jolt occurred. Finally, the fact that Dickeson crossed the Bridge approximately six hours prior to Smith’s accident, and that some 40,000 vehicles of all sizes use that bridge each week day, supports the court’s view that his testimony would not, even if believed, have assisted the jury’s determination of the cause of the accident because it was too remote in time and too lacking in relevant details to be anything but speculative. See Commonwealth v. Tobin, 392 Mass. 604, 613 (1984), and Commonwealth v. Guadalupe, 23 Mass.App.Ct. 97, 101 (1986).
E.
Finally, the defendants contend that the conduct and comments of a juror during the trial deprived them of their right to a fair trial, thereby entitling them to a new trial. Since this claim is also the subject of the defendants’ Renewed Motion to Dismiss, the court will address this issue in the context of both motions.
II.
On the morning of November 5, 2002, just prior to the resumption of the trial, counsel for the MDC advised the court and counsel for the defendants that shortly after the conclusion of the prior trial day’s session on October 31, 2002,[1] a juror had approached her in a public corridor outside the courtroom and stated “you’re doing a great job.”[2] The attorney did not initiate that contact, and did not respond to the juror’s statement. The court immediately brought the juror to the courtroom and inquired of her about the incident. In response to the court’s inquiiy, the juror confirmed that she had made the reported comment to the MDC attorney. She also said that she had not talked to the other jurors about her comment to the MDC counsel, and that her comment would not affect her ability to remain a fair impartial juror.
After conferring with counsel for the parties, the court excused the juror from further participation in the trial and directed her to have no further contact with the remaining jurors, or the lawyers, the parties or the witnesses.
The next morning, November 6, 2002, the MDC attorney reported to the court and counsel for the defendants that she had learned of a conversation between the juror who had been excused on November 5, 2002 and David Lenhardt, a witness who had testified for the MDC earlier in the trial. The MDC attorney stated that after the juror had been excused, Lenhardt and the excused juror had taken the same elevator down to the courthouse lobby, and that during their descent, Lenhardt had asked the juror whether she had formed an opinion based on what she had heard of the trial to date. Counsel for the MDC said that the juror “did respond to that and give her opinion.”
At this point, the defendants’ attorney objected to Lenhardt’s conduct and moved for a dismissal of the MDC’s case.[3] After a hearing, the court denied the defendants’ motion, concluding that Lenhardt’s conversation with the excused juror could not have had an effect on the remaining jurors. At the same time, the court indicated that Lenhardt could well be in contempt of court and suggested that he secure counsel. The MDC’s attorney responded that Lenhardt and another attorney for the MDC were present in the courtroom. The court stated that it would address the matter of Lenhardt’s conduct after the trial, and or *665 dered him to leave the courthouse.[4] The court then asked counsel for the defendants whether he had any additional facts about this matter that he wished to bring to the court’s attention. When counsel responded that he did not, the court ended the hearing and resumed the trial.
The defendants have now moved to dismiss this action, or for a new trial, on the grounds that Lenhardt’s conduct, coupled with their contention that the excused juror had stated to Lenhardt that “I think the insurance company is trying to avoid paying for the damage,” constituted a fraud on the court.
“A ‘fraud on the court’ occurs where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system’s ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party’s claim or defense.” Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1118 (1st Cir. 1989). “It is important to reiterate that it must be shown through clear and convincing evidence that a party’s fraudulent conduct is part of a pattern or scheme to defraud.” Rockdale Management Co., Inc. v. Shawmut Bank, NA, 418 Mass. 596, 600 (1994).
In the present case, the court notes at the outset that neither party’s counsel reported to the court during the trial the words used by the excused juror or even the nature of her statement, despite the court’s invitation to do so. Had this information been timely reported, the court could have instructed the jury that the matter of insurance was not relevant in this case, and/or made inquiry of the jurors about any conversations that they might have had with the excused juror while she was still a member of the jury.
Nevertheless, the court concludes that, in the circumstances of this case, neither Lenhardt’s conduct, nor the statement made to him by the excused juror after she had been excused, constitutes an interference with the fair administration of justice or requires a dismissal of the MDC’s action. The juror was excused from the trial as soon as her comment to the MDC’s attorney was reported. The report was made by the MDC’s attorney at the earliest possible moment, and prior to the resumption of the trial. The excused juror was not allowed to return to the jury room, even to gather her belongings, and she was directed to leave the courthouse and to have no further contact with the remaining jurors. There was no opportunity for the excused juror to interact with or speak to the remaining jurors. Although the incidents were unfortunate, they are not sufficiently serious or severe to constitute a fraud on the court, or to warrant or require a new trial or dismissal of this action.
Accordingly, the Defendants’ Motion for Judgment Notwithstanding the Verdict or, in the Alternative, For New Trial and the Defendants’ Renewed Motion to Dismiss are denied.
III.
The Commonwealth has moved for a new trial on the issue of damages or, in the alternative, for additur, on the ground that the jury’s award of $106,000 was unfounded and contrary to the “clear and uncontroverted evidence of damages adduced at trial” in the amount of $177,939.66. That motion must be denied.
The Commonwealth presented documentary evidence supporting its claims for the cost of temporary and permanent repairs to the Bridge, as well as the costs for MDC personnel and paid police details related to the repair of the Bridge. While this evidence was uncontroverted by any evidence from the defendants, they did not stipulate or agree to the amounts presented or to the work that these charges reflected. Thus, it was properly left to the jury to determine whether the services reflected by these charges were reasonable in amount and that the work itself was reasonable and necessary as a result of Smith’s negligence. The juiy’s verdict on damages represented their considered opinion on these issues, and that verdict is not so inadequate as to require a new trial or even an additur.
IV.
Finally, the Commonwealth has moved for an award of its costs in this action. Upon review of the Commonwealth’s motion and supporting papers, the court concludes that it entitled to recover the cost of the Somerville District Court hearing transcript ($94.60), the cost of its photo enlargements ($61.01) and the cost of its chart ($37.60). In the exercise of its discretion, the court declines to award the Commonwealth the cost of the deposition transcripts, or the cost of the toy tractor/trailer/excavator that sat on the Commonwealth’s attorney’s table during the trial.
ORDER
For the forgoing reasons, the Defendants’ Motion for Judgment Notwithstanding the Verdict, or in the Alternative, for a New Trial is DENIED. The Defendants’ Renewed Motion to Dismiss is DENIED. The Commonwealth’s Motion for New Trial on Damages Only or, in the Alternative, Additur is DENIED. The Commonwealth’s Motion for Costs is ALLOWED in part and DENIED in part, and the Commonwealth is awarded costs in this action in the amount of $ 193.21.

The court was not in session from November 1 through November 4, 2002.

Upon receipt of the defendants’ post-trial motions, the court directed that transcripts of its colloquy with the juror and counsel on November 5, 2002 and with counsel again on November 6, 2002 be prepared and presented to the court and the parties.

The court had ordered Lenhardt and two other MDC witnesses to leave the courtroom on October 30, 2002, after it observed that they were laughing and gesturing inappropriately from the spectators’ benches during the Commonwealth’s cross-examination of a defense expert.

The court has sirrce scheduled a hearing on this matter.