RICHARD G. TALBOT & another[1] *vs.* HORACE MANN INSURANCE
COMPANY & another.[2]

Essex. November 7, 1983. — December 12, 1984.

Present: GREANEY, C.J., GRANT, & SMITH, JJ.

*Negligence,* Insurance company, Insurance agent. *Insurance,* Unfair act or
practice. *Consumer Protection Act,* Unfair act or practice, Insurance
agent, Insurance company.

In an action against an insurance company and an agent employed by it, it was
evident, in light of the judge's instructions to the jury and the jury's
verdicts against the company and in favor of the agent, that the verdict
against the company was based on the theory that the company had
negligently represented to the plaintiffs that its agent was an independent
agent or broker. [96-99]

In an action against an insurance company and an agent employed by it, the
evidence did not warrant a conclusion that the company had negligently
represented to the plaintiffs that its agent was an independent agent or
broker. [99]   ·

In an action against an insurance company and an agent employed by it alleg-
ing fraudulent misrepresentations and deceptive business practices in
violation of G. L. c. 93A, the judge erred in awarding attorney's fees
to the plaintiffs where there was nothing in the record to show that the
judge had found any violation of c. 93A, § 2. [99-100]

CIVIL ACTION commenced in the Superior Court on May
30, 1978.

The case was tried before *Edward H. Bennett,* J.

*Richard L. Neumeier (Andre A. Sansoucy* with him) for
Horace Mann Insurance Company.

*Douglas M. Watson (James H. Sandman* with him) for the
plaintiffs.

[1] Genie E. Talbot.

[2] Michael Leary.

SMITH, J. In late fall of 1976, the plaintiffs, Mr. and Mrs. Talbot, made plans to build a home in Salisbury, Massachusetts. Before starting construction, Mr. Talbot approached one Michael Leary, an insurance agent employed by Horace Mann Insurance Company (Horace Mann). Leary had been the plaintiffs' insurance agent for a period of approximately three and one half years. Mr. Talbot, referring to himself as "an insurance illiterate," explained to Leary that he wanted insurance in order to be adequately protected during the period that the house was being constructed. He told Leary that construction would take place over the winter. Leary reviewed the diagram of the house and was informed by the Talbots of the approximate length of time it would take to complete construction of the house. The Talbots asked Leary what type of insurance he would recommend to them. Leary informed them that the best policy available was an "HO-1" policy, and he suggested that they purchase that insurance for their home. In support of his recommendation, he told the Talbots that he had built a home himself the year before and that he had purchased an HO-1 policy on that house while it was being built. He told the Talbots that they "could sleep well nights [knowing that they were] adequately protected." In reliance upon Leary's recommendation, the Talbots purchased a Horace Mann HO-1 insurance policy from Leary.

At the time that Leary sold the HO-1 policy to the plaintiffs, he was working exclusively for Horace Mann and sold only Horace Mann insurance policies. It was the practice of Horace Mann to limit coverage on houses under construction to either a general fire policy or an HO-1 policy. Other insurance companies, however, including the State-administered "fair plan" homeowner's insurance program, did make broader forms of insurance available for houses under construction. These forms of insurance included "HO-2" and "HO-3" policies, each covering a considerably broader range of perils than the HO-1 policy purchased by the plaintiffs.[3] Leary was not aware that other

---

[3] An HO-1 policy covers eight named perils. An HO-2 policy covers several additional perils. By contrast, HO-3 is an "all risk" policy which

insurance companies offered more comprehensive insurance coverage for houses under construction, and thus never disclosed that fact to the plaintiffs. Several weeks after construction commenced, the house collapsed under the weight of heavy snow and ice during a storm. The loss was not covered under the Talbots' HO-1 policy but would have been covered under any other company's HO-2 policy or HO-3 policy.

The plaintiffs brought an action against Leary and Horace Mann. Their complaint contained counts alleging fraudulent misrepresentations and deceptive business practices in violation of G. L. c. 93A against both defendants, and a count alleging negligent misrepresentation against Leary alone.

At the start of the jury trial,[4] the plaintiffs proceeded against the defendants on the theories of liability expressed in their complaint. But midway in the trial, at the suggestion of the judge, the plaintiffs advanced a new theory of liability that had not been contained in their complaint. This theory alleged that Horace Mann had negligently failed to inform the plaintiffs of limitations on Leary's authority to act on its behalf and negligently failed to train and instruct him in the sale of insurance. The jury returned verdicts in favor of Leary but against Horace Mann in the amount of $10,860, a stipulated sum. After the verdicts, the plaintiffs filed a motion to amend their complaint to conform it to the evidence.[5] Mass.R.Civ.P. 15(b), 365 Mass. 761 (1974). The judge allowed the motion, stating that "it is clear that the motion for the most part rather

---

basically insures the structure for all risks of physical loss except for certain exclusions not here relevant. All these policies were available in Massachusetts in 1976.

[4] The G. L. c. 93A count was reserved by the judge for his determination. See *Nei* v. *Burley*, 388 Mass. 307, 315 (1983). After a hearing the judge found a violation of G. L. c. 93A by Horace Mann but declined to award multiple damages. He did, however, award $10,000 in attorney's fees to the plaintiffs.

[5] The body of the motion does not state that it was filed for the purpose of amending the complaint to conform it to the evidence. The judge's remarks when he allowed it indicate that it was filed for that purpose. Horace Mann did not object to its allowance.

accurately describes what the jury found, at least according to the [c]ourt's understanding."[6]

Horace Mann filed motions for directed verdicts and for judgment notwithstanding the verdict. Mass.R.Civ.P. 50(b), 365 Mass. 814 (1974). The judge denied the motions, and Horace Mann has appealed. In addition, Horace Mann has appealed from the judge's ruling that there was a G. L. c. 93A violation (see note 4, *supra*). The plaintiffs have also appealed, contending that the judge erred in refusing to award multiple damages under G. L. c. 93A.

1. *Sufficiency of the plaintiffs' evidence.* The judge instructed the jury on the fraudulent misrepresentation counts and on the negligence theory advanced by the plaintiffs during the trial. The judge did not submit special questions to the jury (see Mass.R.Civ.P. 49[a], 365 Mass. 812 [1974]), and the jury returned general verdicts, one in favor of Leary and the other against Horace Mann. In view of the instructions of the judge to the jury and the verdicts returned by the jury, it is possible to ascertain the particular theory of liability advanced by the plaintiffs that formed the basis of the verdict. See *Commonwealth* v. *Anthes*, 5 Gray 185, 200 (1855) ("the law presumes, in case of a general verdict, that the jury have understood and conformed to the directions of the judge in matters of law").

In his instructions on the fraudulent misrepresentation counts, the judge instructed the jurors that they could not split their verdicts, that the verdict they returned in regard to one defendant had to be the same verdict returned as to the other defendant. Because the jury returned a verdict against Horace Mann alone, and we presume that the jury followed the judge's instructions, see *Commonwealth* v. *Anthes, supra,* we conclude that the fraudulent misrepresentation counts did not form the

---

[6] The amendment of the complaint contained the following allegations: that Horace Mann had "negligently failed to adequately inform its agent, . . . of the practices, customs, and standards of the insurance industry; negligently failed to adequately train and instruct [its agent] in the sale of insurance; and negligently failed to adequately inform the [p]laintiffs of the limitations upon [its agent's] authority to act on behalf of [Horace Mann]."

basis of the verdict against Horace Mann. However, in his instructions to the jury as to negligence, the jurors were told by the judge that, unlike the fraudulent misrepresentation counts, it was possible to return a verdict in favor of Leary and a verdict against Horace Mann. This course of action was adopted by the jury and therefore we conclude that the plaintiffs' theory of negligence must have formed the basis of the verdict against Horace Mann.

A careful reading of the judge's instructions on negligence further refines the basis of the jury's verdict against Horace Mann. The judge instructed the jury that under the plaintiffs' theory Horace Mann owed a duty to the plaintiffs to avoid holding its employee, Leary, out to them as an independent agent or broker, therefore avoiding the creation of an unreasonable risk that the plaintiffs would assume that they were dealing with an agent whose information and advice pertained to the entire field of available insurance rather than the limited types of insurance offered by Horace Mann only. He never instructed the jury on the plaintiffs' allegations that Horace Mann negligently failed adequately to inform Leary of the practices, customs, and standards of the insurance industry or negligently failed to instruct and train Leary in the sale of insurance.[7] Because these theories were never passed on by the jury, they cannot form the basis of liability against Horace Mann. *Kunkel* v. *Alger*, 10 Mass. App. Ct. 76, 85 (1980).[8] Therefore, in view

---

[7] Nor did the judge ever instruct the jury on the negligent misrepresentation theory alleged against Leary in the plaintiffs' complaint. The plaintiffs did not object to the judge's instructions on negligence.

[8] The complete instruction by the judge as to the negligence theory is as follows. "But we will now advance to the second theory, it seems to me, of the case, which is grounded upon the well-known common law concept of negligence, and essentially would charge both Mr. Leary and Horace Mann with negligence, and I will just pause to give you a gloss on just the word negligence.

"Negligence is doing something that a reasonably prudent person or company would not do under the circumstances because doing it would create an unreasonable risk of loss to somebody else. Then you turn it around into the negative. Negligence is also failure to do something which a reasonably prudent person or company would have done in order to prevent or mitigate an unreasonable risk of loss to a third person. That concept as

of the judge's instructions, the verdict against Horace Mann must have been based on only one aspect of the negligence

applied, as I understand the case, here amounts, it seems to me, essentially to this; that there was a duty upon Horace Mann to — to start off with them for a change — not to permit Mr. Leary to be held out to the public as if he were a broker or an independent agent for fear that an unreasonable risk would be created; that a member of the public would assume in dealing with Mr. Leary that they were dealing with a broker or an independent agent. A similar conceptual charge, as I understand the theory, would be made and is made by the plaintiffs against Mr. Leary more or less along the same lines; that by his posture, making Horace Mann insurance available without cautioning a customer that the only line represented was Horace Mann created an unreasonable risk of harm to a given customer because the customer, relying upon the apparent, perhaps, reasonably apparent, perhaps — up to you find — posture of Mr. Leary as an 'insurance agent' more likely than not would lead the customer to the belief that they were dealing with a broker or an independent agent who had access and who had a duty to have access to the policies of more than one company and be acquainted with their coverage. So that the theory against both Horace Mann and Leary is, as I gather it, on the negligence side, as I have said, the creation of an unreasonable risk that a prudent company or person would have taken care to prevent or at least mitigate; that people dealing with an employee of Horace Mann could be misled into thinking that they were dealing with an independent agent, thereby, as applied to the facts of this case, thinking that when Mr. Leary made a statement, he was speaking as of knowledge of the whole insurance spectrum, when in fact he was speaking with knowledge of the Horace Mann spectrum only. I know I am wearing you out, but in trying to button that up closer, the creation of a likely risk of harm by the nature of Mr. Leary's employment.

"Now under this theory, it is true — I believe under such a theory — that you have the same potential defendants, and, of course, it is true you have the same potential defendants and that if you were to find against Mr. Leary on that theory that he was negligent, that he conducted himself in such a way as to create this risk with knowledge of the risk created, and you came in with a verdict against him on that theory, you would hit Horace Mann for the same amount. Within this theory of the case, however, it occurs to me that it is not necessarily identical in result with the first theory, that is the tort of misrepresentation theory, because it may be open to you to find that under the nature of Leary's employment, he followed instructions — I am not saying that he did this; I am saying it is open to you to find this — that he was an employee, you might find, bound to follow. You might find that his education in the insurance field was derived from his employer, Horace Mann. You might find that the materials given to him, including the chart, were given to him by Horace Mann. You might find that he was in that posture that I suggested certain experienced businessmen would understand in regard to his duties to his employer, which, I suppose in

theory of the plaintiffs advanced at trial — the negligent holding out to the plaintiffs by Horace Mann that Leary was an independent agent or broker.

The plaintiffs contend that, although there are no Massachusetts cases on point, we should hold that an insurance company has the duty to disclose to its potential customers that its employee-agent is not an independent agent or broker authorized to sell insurance for other insurance companies. We decline to so hold because, assuming without deciding that the plaintiffs' view of the law is correct, they failed to show that Horace Mann was negligent.

There was no evidence that Horace Mann made any representations to the plaintiffs concerning Leary's status nor was there any evidence that Leary held himself out to the plaintiffs as an independent agent or broker. The evidence of the plaintiffs was that they knew that Leary was "employed" by Horace Mann and that he "represented" that company.[9] There was no evidence that the plaintiffs thought or believed that Leary was authorized to sell insurance for other insurance companies in addition to Horace Mann. Therefore, we hold that, in view of the instructions of the judge to the jury and the verdicts returned, the evidence of the plaintiffs, on this record, failed to establish that Horace Mann was liable to the plaintiffs.

2. *The G. L. c. 93A claim.* As previously stated (note 4, *supra*), the judge reserved the plaintiffs' G. L. c. 93A claim for himself. After the jury had returned its verdicts, the judge heard arguments of counsel as to whether multiple damages were warranted and received documents relevant to the ap-

---

a utopian world arguably might conflict with what he might feel were his human obligations to his customers, if I make myself plain to some of you who have worked in the business area. In short, what I am trying to say is that on this second — I call it the second theory of the case — it might occur to you that a finding of negligence, if indeed you found one, would more properly be assessed against the architect of the dilemma, to wit, Horace Mann than against the employee who finds himself in this interesting situation, now to go back full circle as that of a 'captive agent'."

[9] The testimony of Mr. Talbot that he was an "insurance illiterate" was in regard to the *type* of insurance policy required in the situation, and not directed at the status of Leary.

propriate value of an award of attorney's fees under G. L. c. 93A. The judge refused to award additional damages but did award attorney's fees in the amount of $10,000. The record shows that the judge specifically stated that he was not going to make any finding that "the behavior of Horace Mann constituted willful or knowing violation of Section 2 of Chapter 93A, nor bad faith, failure to know, if you will, of a violation of Section 2." Further, the record is silent as to any finding by the judge that he found *any* violation of G. L. c. 93A, § 2, by Horace Mann. Before attorney's fees are awarded, the court must find that there has been a violation of G. L. c. 93A, § 2. See G. L. c. 93A, § 9(4). Such a finding was totally lacking on this record.

*Judgment reversed.*

*Judgment for the defendant.*