Tufankjian *v.* Rockland Trust Company.

## CHARLES G. TUFANKJIAN, JR. *vs.* ROCKLAND TRUST COMPANY.

No. 00-P-1897.

Plymouth. October 18, 2002. - January 21, 2003.

Present: KANTROWITZ, KASS, & MILLS, JJ.

*Contract,* Loan, Implied covenant of good faith and fair dealing. *Bank. Loan. Consumer Protection Act,* Bank, Unfair act or practice. *Evidence,* Hearsay, Declaration of deceased person. *Damages. Practice, Civil,* Verdict, Relief from judgment.

The judge in a civil action erred in allowing the defendant bank's motion for judgment notwithstanding the verdict on a breach of contract claim arising out of a failed loan arrangement to purchase an automobile dealership, where, given that a number of the positions and actions taken by the bank were designed to force financial concessions from the plaintiff and injured his right to receive the fruits of his contract with the bank, the jury were warranted in finding a breach of the duty of good faith and fair dealing, and, therefore, in the circumstances of this case, a breach of the contract. [176-178]

In a civil action arising out of a failed loan arrangement to purchase an automobile dealership, the conduct of the bank in taking a number of positions and actions that were designed to force financial concessions from the plaintiff and injured his right to receive the fruits of his contract with the bank constituted an unfair or deceptive act under G. L. c. 93A. [178-179]

The judge in a civil action did not err in admitting in evidence the testimony of a deceased person, where there was sufficient evidence to indicate that the deceased person had made his statements in good faith and based upon his own knowledge. [179]

In a civil action for breach of contract, breach of the duty of good faith and fair dealing, fraud and misrepresentation, and a violation of G. L. c. 93A, arising out of a failed loan arrangement to purchase an automobile dealership, the evidence was sufficient to support an award of damages, including testimony that, as a result of the defendant's actions, the plaintiff had to obtain substitute financing from other sources at higher interest rates and to incur expenses seeking alternate financing. [179-180]

This court concluded that the judge in a civil action did not abuse her discretion amounting to an error of law in denying the defendant's motion for relief from judgment. [180]

CIVIL ACTION commenced in the Superior Court Department on September 19, 1994.

The case was tried before *Elizabeth B. Donovan,* J., and a motion for relief from judgment was heard by her.

*Ian Crawford* for the defendant.

*Dana Alan Curhan* (*Harold Jacobi, III,* with him) for the plaintiff.

KANTROWITZ, J. Charles Tufankjian (Tufankjian) sued Rockland Trust Company (Bank), alleging breach of contract (count 1); breach of the duty[1] of good faith and fair dealing (count 2); fraud and misrepresentation (count 3); negligence (which was ultimately waived) (count 4); and a G. L. c. 93A violation (count 5). The Bank counterclaimed for the cost of a $3,500 appraisal.

In response to special questions, a jury returned a verdict for Tufankjian on counts 1, 2, 3, and 5, and awarded him $232,116 in damages. The jury also returned a verdict for the Bank on its $3,500 counterclaim. The judge granted the Bank's motion for judgment notwithstanding the verdict on count 1, the breach of contract claim. On the G. L. c. 93A claim, the judge adopted the jury's finding and trebled the damages. She also awarded attorney's fees of $102,392.50. In all other respects, the judge allowed the jury's verdict to stand.

After trial, the Bank appealed, claiming that the trial judge erred in (1) permitting to stand the jury's verdict for breach of the duty of good faith and fair dealing while overturning the verdict on Tufankjian's related breach of contract claim; (2) failing to order judgment for the Bank on the issues of misrepresentation, G. L. c. 93A, and damages; (3) permitting the introduction of inadmissible and prejudicial hearsay; and (4) denying the Bank's rule 60(b) motion, see Mass.R.Civ.P. 60(b), 365 Mass. 828 (1974), without reaching the merits. Tufankjian cross-appealed, claiming error in setting aside the breach of contract claim. Assuming, without deciding, that all the issues raised by the Bank were in fact preserved for appeal, we affirm in part and reverse in part.

*Factual background.* In the fall of 1993, Tufankjian wished

---

[1] While Tufankjian uses "covenant," we prefer the terminology of the Restatement (Second) of Contracts § 205 (1979): "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement."

to acquire a Toyota automobile dealership. He signed an agreement to purchase for approximately $1.4 million. That done, Tufankjian applied to Citizens Bank and New England Merchants Bank for loans to finance the acquisition. As he was awaiting responses, a representative from the Bank (Malinowski) approached him, offering to provide floor-plan financing, i.e., the financing of the inventory. Tufankjian was not interested in the floor-plan financing plan, but became interested in the Bank when Malinowski indicated that the Bank would finance the entire purchase of the new dealership.[2]

Within a week, Tufankjian was informed that the Bank had approved his loan. The Bank offered to lend Tufankjian $700,000 at a fixed 7.5 percent interest rate for five years and at a floating rate for the remaining five years, with additional financing through a Small Business Administration (SBA) loan at a separate interest rate. Tufankjian, who was unfamiliar with SBA loans, was put in contact with Kristen Teixeira (Teixeira), a vice president of the Bank in charge of SBA loans. Teixeira explained the process for SBA loans to Tufankjian and "guaranteed" that the interest rate applicable to the SBA portion of the loan would be, at most, 6.5 percent.[3] Tufankjian agreed to proceed with the loan on these terms. He immediately began to prepare and provide the paperwork required by the Bank, such as an appraisal (which he later learned was the responsibility of the Bank) and an environmental site report.

The Bank and Tufankjian signed a commitment letter, dated April 1, 1994,[4] in which the only interest rate quoted referred to the $700,000 that the Bank would lend.[5] SBA financing, in the amount of $560,000, was referred to in the commitment letter

---

[2]This solicitation came as a surprise to Tufankjian, as he and the seller had wanted the deal to be kept quiet.

[3]A guarantee Teixeira denied at trial. Specifically, Teixeira, who left the Bank's employ shortly after signing the April 1, 1994, commitment letter, testified that she did not have conversations with Tufankjian guaranteeing the SBA loan rate, and that she did not recall any conversation regarding the loan rate. The jury appears to have credited Tufankjian's testimony on the issue.

[4]Tufankjian had rejected two prior commitment letters that had been offered by the Bank, as they had contained provisions inserted by the Bank that were not a part of the deal (i.e., different interest rates and floor-plan financing).

[5]The commitment letter contained an integration clause, which read: "This letter supersedes all prior oral or written agreements or discussions between

only as a condition of the Bank's loan.[6] The closing was scheduled for no later than June 30, 1994. Tufankjian questioned Teixeira about the omission in the commitment letter of the "guaranteed" interest rate for the SBA component of the financing. Teixeira reassured Tufankjian that the rate would be 6.5 percent. He was also told that it was necessary to appear before both the South Shore Economic Development Corporation (SSEDC), an independent entity that screened and recommended SBA loans, and then the SBA itself.

Prior to the closing, Tufankjian learned that the interest rate on the SBA loan could be higher than the rate Teixeira had promised. Tufankjian contacted Teixeira, who admitted this was a problem that she was trying to address. A few days later, she called to say that the rate was not going to be 6.5 percent. Tufankjian met with the president and vice president of the Bank, neither of whom would honor the rate guaranteed by Teixeira.[7] Matters continued to crumble, ultimately resulting in the loan not being consummated, with the Bank's actions obstructive of Tufankjian's efforts to perform in accordance with the commitment.

Although Tufankjian did ultimately purchase the dealership, it was not without great stress. Tufankjian was forced to make alternative arrangements to finance the transaction from other sources, on terms that were less favorable than those the Bank had first offered. This action followed.

1. *Breach of the duty of good faith and fair dealing.* The Bank alleges that by permitting the jury's verdict to stand on the breach of the duty of good faith and fair dealing count while directing judgment for the Bank on the breach of contract

Borrowers [Tufankjian] and Bank concerning the loan. No officer of the Bank or other person is authorized to make any oral commitments in respect to a loan from the Bank. This letter represents the maximum scope of the commitment offered to you by the Bank."

[6] The aggregate financing contemplated in the commitment letter came to $1,260,000, an amount that was ninety percent of the purchase price for the dealership.

[7] In response to Tufankjian's complaint that he had been guaranteed a 6.5 percent rate by Teixeira, the vice president of the Bank said to Tufankjian, "[Y]ou're a fifty year old man . . . you mean to tell me that you're going to take the word of a thirty year old girl?"

count, the trial judge entered an inconsistent judgment unsupported by the evidence.

In Massachusetts, every contract[8] implies good faith and fair dealing by the parties in its performance. See *Anthony's Pier Four, Inc.* v. *HBC Assocs.*, 411 Mass. 451, 473 (1991); *Cadle Co.* v. *Vargas*, 55 Mass. App. Ct. 361, 366 (2002); Restatement (Second) of Contracts § 205 (1979). This duty "translates into an 'implied term' or condition of the contractual arrangement. 'Good faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party.' " (Citations omitted.) *Cadle Co., supra* at 366. Good faith and fair dealing is the understanding between the parties "that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract" (citations omitted). *Anthony's Pier Four, Inc., supra* at 471-472.

As in *Anthony's Pier Four, Inc.*, a number of the positions and actions taken by the Bank were designed to force financial concessions from Tufankjian and injured his right to receive the fruits of the contract. The Bank played an essential role in financing the proposed purchase of the dealership, both in providing financing directly and in its assistance in obtaining the SBA loan. The Bank knew of Tufankjian's reliance on its advice and expertise and used that reliance in an attempt to force Tufankjian to "sweeten the deal." *Anthony's Pier Four, Inc., supra* at 473.

The Bank wished to improve upon the deal by including floor-plan financing or obtaining a higher interest rate. Despite Tufankjian's ongoing refusal to accept the Bank's floor-plan financing proposals, the Bank kept making them. See note 4, *supra.*

At various turns the Bank conducted itself in a manner at odds with Tufankjian, and that conduct obstructed the performance required by the commitment letter. The Bank officer presented Tufankjian in a negative light at the SSEDC meeting, denigrating his ability to repay the loan; the appraisal, which

---

[8]The parties agree that the signed commitment letter was a contract between the parties.

was the Bank's responsibility to obtain, was not completed on time, and the Bank required the use of an out-of-State, more expensive appraiser rather than a local, less expensive one. Once the Bank refused to guarantee the interest rate for the SBA portion of the loan, and as Tufankjian's position grew more desperate, the Bank indicated it would lend him all of the money for the dealership, but only at the rate of 7.5 percent with floor-plan financing or at 9.5 percent without the floor-plan financing. There was also evidence that the Bank wished to abort the loan.

The Bank, by its actions, was seeking " 'to recapture opportunities forgone on contracting' as determined by [Tufankjian's] reasonable expectations" and to secure a better deal from him (citations omitted). *Anthony's Pier Four, Inc., supra* at 473. The jury were warranted in finding a breach of the duty of good faith and fair dealing and, therefore, in the circumstances of this case, a breach of the contract. See *Cadle Co.* v. *Vargas*, 55 Mass. App. Ct. at 366. The judge erred in allowing the Bank's *motion for judgment notwithstanding the verdict* on the breach of contract claim.[9,10]

2. *Chapter 93A.* "General Laws c. 93A . . . makes unlawful any '[u]nfair . . . acts or practices in the conduct of any trade or commerce.' . . . [C]onduct 'in disregard of known contractual arrangements' and intended to secure benefits for the breaching party constitutes an unfair act or practice for c. 93A purposes." (Citations omitted.) *Anthony's Pier Four, Inc., supra* at 474.

Our conclusion that the jury were warranted in finding that

---

[9]A jury verdict for the plaintiff will be sustained if there is "anywhere in the evidence, from whatever source derived, any combination of circumstances [that] could be found from which a reasonable inference could be drawn in favor of the plaintiff" (citations omitted). *Dobos* v. *Driscoll*, 404 Mass. 634, 656, cert. denied, 493 U.S. 850 (1989).

[10]Our decision today implies no lessening of the consideration we give to integration clauses; they have an important function in the world of commerce where negotiating parties say many things that they do not expect to subvert the integrated instrument they ultimately agree upon and execute. See *Hogan* v. *Riemer*, 35 Mass. App. Ct. 360, 364 (1993), and cases cited. Notwithstanding the integration clause in the contract at issue here, see note 5, *supra*, the unlawful impropriety in this case flows primarily from the conduct of the Bank after the commitment letter was executed. See discussion, *supra*.

the Bank committed a breach of the duty of good faith and fair dealing provides support for the G. L. c. 93A claim. "The same evidence that supported the jury's findings of a breach of the covenant of good faith and fair dealing . . . also supported the [judge's] finding that [the Bank's] conduct amounted to an unfair or deceptive act under G. L. c. 93A." *Cherick Distribs., Inc.* v. *Polar Corp.*, 41 Mass. App. Ct. 125, 128 (1996). See *Anthony's Pier Four, Inc.*, 411 Mass. at 476.[11]

3. *Statements of a deceased person.* The trial judge did not abuse her discretion in admitting statements of a deceased SSEDC employee, Gene Healey.[12]

General Laws c. 233, § 65, provides that "[i]n any action or other civil judicial proceeding, a declaration of a deceased person shall not be inadmissible in evidence as hearsay . . . if the court finds that it was made in good faith and upon the personal knowledge of the declarant."[13]

There was sufficient evidence to indicate that Healey made the statements in good faith and based upon his own knowledge. He was not a party to the litigation and had no reason to fabricate. There was never a question of blame against Healey's employer, SSEDC, for the failure of the financing deal; nor was there a looming threat of suit against Healey by Tufankjian. The judge did not err in admitting the testimony.[14]

4. *Damages.* We are not persuaded by the Bank's argument that there was insufficient evidence to support the award of damages. Tufankjian's evidence as to his damages included

---

[11]Given our decision on the breach of the duty of good faith and fair dealing and the G. L. c. 93A counts, we need not decide the issue of misrepresentation.

[12]The statements made by Healey were that the 6.5 percent rate was not available and in any event could not be guaranteed; that he had arguments with Teixeira when she asked him to honor the rate, which he could not do; that the Bank was being uncooperative in supplying needed information; and that the Bank wished to cancel the loan.

[13]Even though the trial judge did not specifically find good faith and personal knowledge, such preliminary findings are implicitly imported into rulings admitting evidence. See *Demoulas* v. *Demoulas*, 428 Mass. 555, 564 n.9 (1998), *S.C.*, 432 Mass. 43 (2000).

[14]Parenthetically, even if the evidence had been improperly admitted, it was mainly cumulative of other, properly admitted evidence. See *Doyle* v. *Dong*, 412 Mass. 682, 687-688 (1992); *Foreign Car Center, Inc.* v. *Salem Suede, Inc.*, 40 Mass. App. Ct. 15, 23 (1996).

testimony that, as a result of the Bank's actions, he was required to obtain substitute financing from other sources at higher interest rates and to incur expenses seeking alternate financing.[15] The damage award had a "solid basis in the evidence" at trial. *Rizika* v. *Donovan*, 45 Mass. App. Ct. 159, 166 (1998).[16,17]

5. *Rule 60(b) motion.* Motions for relief from judgment rest within the broad discretion of the judge. The sole and decisive question is whether the ruling constituted an abuse of judicial discretion amounting to an error of law. See *Tai* v. *Boston*, 45 Mass. App. Ct. 220, 224 (1998), and cases cited. In reviewing the record, we perceive no such abuse.

The judgment notwithstanding the verdict on count 1 of the complaint is reversed and judgment for the plaintiff on that count shall be entered. In all other respects the judgment is affirmed.

*So ordered.*

---

[15]The Bank's expert witnesses were precluded from testifying, as a sanction by the trial court, due to the Bank's failure to disclose the substance or grounds of the facts and opinions upon which they were expected to testify.

[16]The damage award was not duplicative. The trial judge gave the jury an instruction to "only allow one recovery. [The plaintiff is] not entitled to recovery for each one of these claims. But again, if you find that the plaintiff has sustained [his] burden of proof against the [B]ank on multiple claims, you allow one single recovery." We presume that the jury followed the judge's instructions. See *Talbot* v. *Horace Mann Ins. Co.*, 19 Mass. App. Ct. 93, 96 (1984).

[17]The trial judge acted within her discretion in awarding treble damages. See *Anthony's Pier Four, Inc.*, 411 Mass. at 475.