NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-443

FAMILY BEHAVIORAL HEALTH INC.

vs.

387 MAIN STREET REALTY TRUST & another.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a jury trial in the Superior Court, the defendants, 387 Main Street Realty Trust (trust) and Raymond Bonneville, were found liable to the plaintiff, Family Behavioral Health Inc., for breach of contract, interference with advantageous business relations, and unfair or deceptive trade practices in violation of G. L. c. 93A.  Judgment entered in favor of the plaintiff.  The defendants appeal.  Because the issues raised in the defendants' brief are thoroughly waived, and in any event lack merit, we affirm.

Discussion.  In their brief, the defendants essentially attack the sufficiency of the evidence that they committed a

_____

[1] Raymond Bonneville.

breach of the lease agreement with the plaintiff, that they intentionally interfered with the plaintiff's business relationships, and that they engaged in unfair or deceptive business practices. The defendants, however, did not move for a directed verdict on any of these claims. Put simply, "[a]n appellate court cannot review the sufficiency of the evidence in the absence of an effective motion for a directed verdict." Martin v. Hall, 369 Mass. 882, 884 (1976). See R.W. Granger & Sons, Inc. v. J & S Insulation, Inc., 435 Mass. 66, 74 (2001) (where defendant argued for first time in postjudgment motion that evidence did not support finding c. 93A violation, "the point was not raised before the trial judge prior to the entry of judgment, and is therefore not properly before us"). The defendants' claims regarding the sufficiency of the evidence have therefore been waived.

The defendants also argue that the damages award was excessive. They have doubly waived this claim. First, although the defendants argue in their brief that the judge should have struck the testimony of the plaintiff's damages witness as unreliable expert testimony, the defendants did not object to the witness's testimony at trial. "[I]ssues not raised below cannot be argued for the first time on appeal." Boss v. Leverett, 484 Mass. 553, 562-563 (2020). Second, the defendants

2

failed to challenge the damages award in a new trial motion.[2]

"Questions concerning inadequate or excessive damages are initially within the discretion of the trial judge and should ordinarily be raised by bringing a motion for a new trial." Pridgen v. Boston Hous. Auth., 364 Mass. 696, 715 (1974). By failing to bring such a motion, the defendants forfeited any argument that the award of damages was excessive or against the weight of the evidence. See Shafir v. Steele, 431 Mass. 365, 371 (2000).[3]

Try as they may, the defendants may not avail themselves of the excuse that trial counsel's failure to preserve these issues or otherwise challenge the plaintiff's proof was the result of "inefficiency" and "inadequate representation." "Such a claim is not a basis for a collateral attack on a civil judgment, where a litigant's sole recourse for his attorney's negligence

---

[2] The docket entries reflect that the defendants filed, and later withdrew, a motion to remit. In any event, as the defendants did not include a copy of that motion in the record appendix, we need not consider it. See Parks v. Johnson, 46 Mass. App. Ct. 905, 906 (1998) (appellant has burden to provide "an adequate record demonstrating that the issues had been preserved").

[3] The defendants' argument that "there is still an independent basis for reversing the judgment," based on the verdict being "excessive and against the weight of the evidence," misses the mark. Every case the defendants cite for this proposition involved appellate review of claims that had first been raised before the trial judge in an appropriate postverdict motion.

is an action for malpractice." Commonwealth v. Patton, 458 Mass. 119, 124 (2010).

Even if the defendants' arguments had been properly preserved at trial -- and setting aside the fact that many of their claims on appeal are unsupported by legal authority and thus are further waived as not rising to the level of appellate argument, see Kellogg v. Board of Registration in Med., 461 Mass. 1001, 1003 (2011); Andover v. Energy Facilities Siting Bd., 435 Mass. 377, 394 (2001) -- they are meritless.  Had the defendants filed a motion for a directed verdict, we would construe the evidence in the light most favorable to the plaintiff and disregard evidence favorable to the defendants. See O'Brien v. Pearson, 449 Mass. 377, 383 (2007).  "A jury verdict will be upheld so long as 'anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff.'" Brewster Wallcovering Co. v. Blue Mountain Wallcoverings, Inc., 68 Mass. App. Ct. 582, 595 (2007), quoting Tufankjian v. Rockland Trust Co., 57 Mass. App. Ct. 173, 178 n.9 (2003).  The evidence, so viewed, amply supported the judgment.

The plaintiff provides medical services to "highly sensitive" clients, predominantly children, with autism spectrum

4

disorder and other developmental disabilities. The plaintiff entered into an agreement with the trust to lease a medical office located in Oxford. Bonneville signed the lease as the sole beneficiary of the trust as the landlord of the leased premises. The lease set forth the plaintiff's right to quiet enjoyment of the premises and required the plaintiff to permit the landlord, "at reasonable times and upon reasonable prior notice," to enter the building to make repairs as the plaintiff deemed necessary. The parties had discussed -- and Bonneville was aware -- that due to the nature of the plaintiff's business, he was not permitted to enter the building during business hours or interact with the plaintiff's clients while on site.

In May 2021, Bonneville entered the leased premises during business hours to use the bathroom. As he left the building, he approached one of the plaintiff's clients, an eight year old girl. He took out his phone, tried to take a photograph of the girl, and said she was "very pretty." On that or another occasion, Bonneville also asked one of the plaintiff's employees what the girl's name was. When the plaintiff raised concerns about his entering the building to use the bathroom, Bonneville responded, "Next time I'll just go outside."

The following July, Bonneville was found sleeping in a shed on the property, in view of the parking lot and the playground,

5

visible to employees, clients, and their families entering or exiting the building.  That same day, an employee saw him urinating on the side of the building near a door that the plaintiff's staff and clients used to get to the playground.

Bonneville's disruptive behavior escalated from there.  One employee complained that he made her feel "super uncomfortable," and she had to be reassigned to another office location.  Another employee observed him walking around the building and looking through the windows at the plaintiff's clients.  In response, the plaintiff mounted security cameras on the outside of the building, which captured Bonneville entering the building unaccompanied at night, then covering and taking down some of the cameras.  Bonneville also installed his own camera on the property.

Before these incidents, the plaintiff had planned to expand its operations to a second location in Auburn.  By the time the Auburn office was ready to accept clients, however, because of Bonneville's disruptive conduct, the plaintiff was compelled to wind down operations there and transform its second location into its primary location.

The plaintiff presented evidence that the business suffered damages totaling $692,084.47.  This amount included $574,084.47

in lost profits, $9,000 in overpaid rent, $1,000 from a lost security deposit, and $108,000 in rent paid.

The defendants argue that Bonneville's interference with the plaintiff's use of the property was minor, benign, and unintentional, but the evidence permitted the jury to find that his conduct was inappropriate and shocking, and that he willingly refused to desist even when alerted to the safety and confidentiality concerns associated with the plaintiff's business.  The evidence also permitted the jury to find that the defendants knowingly and willfully acted in disregard for their contractual obligations to the plaintiff, warranting multiple damages under G. L. c. 93A.  See Anthony's Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 474-475 (1991).  And, finally, the evidence admitted at trial, without objection, substantiated the jury's calculation of damages.

Conclusion.  We affirm the judgment in all respects.  In addition, the plaintiff seeks attorney's fees on the basis that the defendants' appeal is frivolous, and we allow that request. See Mass. R. A. P. 25, as appearing in 481 Mass. 1654 (2019). The plaintiff may file with the clerk of this court materials detailing and supporting the requested award within fourteen days of the date of this decision, in accord with the procedure

outlined in <u>Fabre</u> v. <u>Walton</u>, 441 Mass. 9, 10-11 (2004).  The defendants shall have fourteen days thereafter to respond.

<u>Judgment affirmed</u>.

By the Court (Meade,
  Massing & Brennan, JJ.[4]),

Clerk

Entered:  March 2, 2026.

---

[4] The panelists are listed in order of seniority.